**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

ANDREW ALEXANDER,
HUBERT ANDERSON,
JOHN BARNES,
STEVEN BARNES,
JARRED BAYSINGER,
MAURICE BISHOP,
BENNY BLANSETT,
JASON BONDS,
ANTONIO BOYD,
MCKINLEY BRADY,
DARKEYUS BROWN,
CHRISTOPHER BURNS,
CEDRIC CALHOUN,
and RAYSHON DARDEN,
on behalf of themselves
and all others similarly situated,

Plaintiffs,

vs.                                                        Civil Action No. <u>4:20cv21-DMB-JMV</u>

PELICIA E. HALL, in her official capacity as the          **CLASS ACTION COMPLAINT**
Commissioner of the Mississippi Department of             **AND DEMAND FOR JURY TRIAL**
Corrections, and her successor; TOMMY TAYLOR,
in his official capacity as Interim Commissioner of
the Mississippi Department of Corrections, and his
successor; and MARSHAL TURNER, in his official
capacity as the Superintendent of the Mississippi
State Penitentiary, and his successor.

Defendants.

_____/

**INTRODUCTION**

1. This is a class action complaint filed on behalf of prisoners confined at the Mississippi State

   Penitentiary at Parchman ("Parchman") against Defendants PELICIA E. HALL, in her official

   capacity as the Commissioner of the Mississippi Department of Corrections ("MDOC"), and

   her successors; TOMMY TAYLOR, in his official capacity as Interim Commissioner of the

2

Mississippi Department of Corrections, and his successors; and MARSHAL TURNER, in his official capacity as the Superintendent of the Mississippi State Penitentiary, and his successors, who allege as follows:

2. Due to Mississippi's failure to properly fund, staff, and maintain its prisons, Plaintiffs are currently being confined in conditions which pose serious and imminent dangers to their safety and well-being.

3. The shortage of correctional officers on staff at Parchman creates and enables an environment in which the inmates at Parchman are particularly susceptible to violence, gang influence, and prolonged states of anarchy.

4. Parchman has been in an ongoing state of crisis. The inexcusable chaos which has ensued within the prison has been due in large part to the glaring insufficiency of correctional officers.

5. Since January 1, 2020, at least nine inmates have died at Parchman,[1] and at least two other inmates have escaped from Parchman.[2]

6. Also due to a lack of funding, Parchman is not equipped to effectively manage such crises. MDOC Coroner Heather Burton reports that so many individuals have been injured at Parchman that the on-site 128-bed medical unit cannot handle them all.[3] Coroner Burton also notes that there have been at least four uprisings throughout 2019 similar to that which is currently ongoing.[4]

---

[1] *See* Amanda Watts, *Ninth Inmate Dies at Mississippi's Parchman Prison Since the Start of the Year,* CNN (Jan. 27, 2020) https://www.cnn.com/2020/01/27/us/mississippi-parchman-ninth-death/index.html.
[2] *See Two Prisoners Escape Mississippi Prison After Weeks of Violence*, WMC NEWS (Jan. 4, 2020), https://www.wmcactionnews5.com/2020/01/04/two-inmates-escape-mississippi-prison-after-week-violence/.
[3] *See* China Lee, *One Inmate Killed, Others Injured During Riot at Parchman*, WLOX (Jan. 2, 2020), https://www.wlox.com/2020/01/02/fire-reported-state-prison-parchman/.
[4] *See* Bryan Davis Publisher, *One Confirmed Dead in Second Parchman Riot in as Many Days*, ENTERPRISE-TOCSIN (Jan. 2, 2020), https://www.enterprise-tocsin.com/front-page-slideshow-news/one-confirmed-dead-second-parchman-riot-many-days#sthash.O9C6Zrps.dpbs.

7. Parchman is so severely underfunded that inmates are routinely denied access to basic amenities such as clean water, plumbing, and electricity. A slew of disturbing images and videos have surfaced showing that inmates are being required to defecate in plastic bags inside of their cells because their toilets are not functional.[5]

8. The underfunding also forces people held in Mississippi's prison to live in squalor, endangering their physical and mental health. The prisons have failed to provide the basic necessities, such as a place to sleep. In Parchman, the units are subject to flooding. Black mold festers. Rats and mice infest the prison. Units lack running water and electricity for days at a time.

9. These deaths and deplorable living conditions are the culmination of years of severe understaffing and neglect at Mississippi's prisons. As Mississippi has incarcerated increasing numbers of people, it has dramatically reduced its funding of prisons. Nearly half of the prison guard slots for Mississippi's prisons remain unfilled. The Mississippi State Penitentiary at Parchman, a maximum-security prison built on the site of a former plantation, has only one-quarter of the corrections officers it needs.

10. The MDOC has a constitutional obligation to protect the individuals in its custody from harm at the hands of officers or other incarcerated individuals. The conditions under which Parchman prisoners are currently being held are inhumane and unconstitutional. The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment and is violated when prison officials fail to protect against prison-related violence

---

[5] *See* Nathan Dimoff, *Life inside Mississippi's Most Notorious Prison through the Eyes of an Inmate,* PINAC NEWS (January 16, 2020) https://newsmaven.io/pinacnews/eye-on-government/life-inside-mississippi-s-most-notorious-prison-through-the-eyes-of-an-inmate-OQEJVHKSwki-D4oseiCXCg

2

and when prison conditions fail to meet basic human needs. The conditions present at Parchman constitute a grave and imminent danger to Plaintiffs.

11. By this action, Plaintiffs seek immediate relief from these unconstitutional conditions for themselves and all others similarly situated.

## PARTIES

12. Plaintiffs repeat and re-allege the allegations of the above paragraphs.

13. Plaintiffs Andrew Alexander, Hubert Anderson, John Barnes, Steven Barnes, Jarred Baysinger, Maurice Bishop, Benny Blansett, Jason Bonds, Antonio Boyd, McKinley Brady, Darkeyus Brown, Christopher Burns, Cedric Calhoun, and Rayshon Darden, are all individuals incarcerated at the Mississippi State Penitentiary in Parchman, Mississippi ("Parchman") who bring this action on behalf of themselves and a class of prisoners currently confined or who will be confined at Parchman. Plaintiffs have been and are at substantial risk of serious harm in the form of prison violence, and by the squalid conditions in which they are forced to live, and these conditions are violative of Plaintiffs civil rights.

14. Plaintiffs Andrew Alexander, Hubert Anderson, John Barnes, Steven Barnes, Jarred Baysinger, Maurice Bishop, Benny Blansett, Jason Bonds, Antonio Boyd, McKinley Brady, Darkeyus Brown, Christopher Burns, Cedric Calhoun, and Rayshon Darden, like all prisoners are forced to live in filthy, dangerous, and degrading conditions that has and will place them at a substantial risk of serious harm, and these conditions are violative of Plaintiffs civil rights.

15. Defendant PELICIA E. HALL was the Commissioner of the Mississippi Department of Corrections ("MDOC") from March 2017 until the end of December 2019. By statute, the MDOC is "vested with the exclusive responsibility for management and control of the correctional system, and all properties belonging thereto" and "shall be responsible for the

2

management of affairs of the correctional system and for the proper care, treatment, feeding, clothing and management of the offenders confined therein." Miss. Code Ann. § 47-5-23. The Commissioner has the duty and authority to do the following: "Establish the general policy of the Department" (§47-5-20); "implement and administer laws and policy related to corrections" (§47-5-28(a)); and "establish standards… and exercise the requisite supervision as it relates to correctional programs over all state-supported adult correctional facilities[.]" (§47-5-28(b)). As Commissioner, Defendant Hall had the ultimate responsibility for ensuring that all prisons under the jurisdiction of MDOC operate in compliance with state and federal law. Individuals at Parchman have sent numerous complaints to Defendant Hall, and Defendant Hall has personally inspected Parchman on multiple occasions. At all times relevant hereto, she has acted under color of state law. Defendant Hall is sued in her official capacity. Additional allegations regarding Defendant Hall's conduct are set forth herein.

16. Defendant TOMMY TAYLOR is the Interim Commissioner of the Mississippi Department of Corrections as of January 2020. As Interim Commissioner, Defendant Taylor is bound by the same statutes, duties, and responsibilities which governed Defendant Hall in her official capacity as the Commissioner of the Mississippi Department of Corrections. The Interim Commissioner has the duty and authority to do the following: "Establish the general policy of the Department" (§47-5-20); "implement and administer laws and policy related to corrections" (§47-5-28(a)); and "establish standards… and exercise the requisite supervision as it relates to correctional programs over all state-supported adult correctional facilities[.]" (§47-5-28(b)). As Interim Commissioner, Defendant Taylor has the ultimate responsibility for ensuring that all prisons under the jurisdiction of MDOC operate in compliance with state and

federal law. At all times relevant hereto, he has acted under color of state law. Defendant Taylor is sued in his official capacity.

17. Defendant MARSHAL TURNER is Superintendent of the Mississippi State Penitentiary. Defendant Turner manages the operations of Parchman. Defendant Turner is aware of the problems at Parchman and has failed to take reasonable measures to abate the substantial risks of serious harm set forth herein. At all times relevant hereto, Defendant Turner has acted under the color of state law. Defendant Turner is sued in his official capacity.

## JURISDICTION AND VENUE

18. Plaintiffs repeat and re-allege the allegations of the above paragraphs.

19. This action arises under the United States Constitution and 42 U.S.C. § 1983. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4).

20. This Court further has proper jurisdiction of as this is a class action with an amount in controversy exceeding $5 million, exclusive of interest and costs, pursuant to 28 U.S.C. § 1332(d), 1453, 1711-1715.

21. Venue lies properly with this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District.

## FACTS

22. Plaintiffs repeat and re-allege the allegations of the above paragraphs.

23. The State of Mississippi has severely underfunded its prison system for years. This is a virtually undisputed fact. The occurrences alleged and facts stated herein are a symptom of Mississippi's well-documented failures to adequately fund, staff, and maintain its prisons.

24. The lack of funding has resulted in shortages of basic inmate necessities (i.e. clean water, functional plumbing and electricity, etc.) and prison staff to oversee and maintain control over the Parchman facility.

25. In January 2019, Defendant Hall acknowledged that the near-capacity prison populations and extreme staff vacancy rates had created a "staffing crisis," which threatened a "pressure cooker type situation" in the MDOC's three state-run prisons, including Parchman.[6] At the time of her statement, Parchman had a 42% staff vacancy rate.[7] This staffing crisis has persisted since.

26. Parchman has a maximum capacity of 3,560 prisoners and a current population of 3,252 prisoners.[8]

27. In April 2019, the United States Department of Justice Civil Rights Division issued a report in which it cited the Alabama Department of Corrections ("ADOC") for "egregious" and "dangerous" systemwide understaffing that contributed to likely violations of the Eighth Amendment rights of Alabama prisoners.[9] ADOC maintains a staffing ratio of 9.9 prisoners per correctional officer.[10] At the end of October 2019, the staffing ratio at Parchman (12.5 prisoners per correctional officer) was worse than Alabama's.[11]

---

[6] *See* MISS. DEP'T OF CORRS., *SMCI Staffing Crisis Prompts Lockdown and Visitation Cancellation*, January 25, 2019, https://www.mdoc.ms.gov/Pages/SMCI-Staffing-Crisis-Prompts-Lockdown-and-Visitation-Cancellation-.aspx.

[7]*See* MISS. DEP'T OF CORRS., *SMCI Staffing Crisis Prompts Lockdown and Visitation Cancellation*, January 25, 2019, https://www.mdoc.ms.gov/Pages/SMCI-Staffing-Crisis-Prompts-Lockdown-and-Visitation-Cancellation-.aspx

[8] *See* MISS. DEP'T OF CORRS., Daily Inmate Population (Dec. 2019), https://www.mdoc.ms.gov/Admin-Finance/DailyInmatePopulation/2019-12%20Daily%20Inmate%20Population.pdf.

[9] *See* U.S. DEP'T OF JUSTICE, *Investigation of Alabama's State Prisons for Men* 9–10 (Apr. 2, 2019), https://www.justice.gov/crt/case-document/file/1149971/download.

[10] *See* Jerry Mitchell, *Violent, Ongoing Hell: Mississippi Prisons May Be Worse than Alabama's. Will DOJ Step in?*, CLARION LEDGER (Aug. 21, 2019), https://www.clarionledger.com/story/news/2019/08/21/mississippi-prisons-conditions-worse-than-alabama-doj-violence-cruel-unusual-punishment/2055478001/.

[11] *See* MISS. DEP'T OF CORRS., *Daily Inmate Population – October 2019* (Nov. 8, 2019), https://www.mdoc.ms.gov/Admin-Finance/Documents/2018%20Annual%20Report.pdf.

28. Mississippi currently pays the lowest salaries for correctional staff of any state in the country. The MDOC offers entry level correctional officers a salary of $24,900;[12] a family of four surviving on this salary would fall below the Federal Poverty Level.[13]

29. The State of Mississippi spends $3,770 per inmate, which is less than two-thirds of the $5,720 national median expenditure per inmate.[14]

30. The neglected state of prison facilities fosters an environment for violence. Parchman is overcrowded and has insufficient mattresses for its population, leaving inmates sleeping on the floor.[15] The prison units have been flooded and are now covered in black mold.[16] The physical facilities reflect the scars of neglect, with light fixtures missing and holes in the walls. Toilets back up, resulting in floors covered with raw sewage. Electricity and running water are provided only sporadically.[17] At Parchman, drinking water repeatedly has failed to meet federal safety standards. The prison has been cited for violating the Safe Drinking Water Act nearly 100 times since 2012, and the Environmental Protection Agency has cited the prison's sewage system for three years for violating the Clean Water Act.[18]

---

[12] See Jerry Mitchell, *Inside The Prison Where Inmates Set Each Other On Fire and Gangs Have More Power Than Guards*, PROPUBLICA (Aug. 19, 2019), https://www.propublica.org/article/leakesville-south-mississippi-correctional-institution-prison-gangs.
[13] See U.S. Department of Health and Human Services, *HHS Poverty Guidelines for 2020,* (January 15, 2020), https://aspe.hhs.gov/poverty-guidelines.
[14] See Matt McKillop, *Prison Health Care Spending Varies Dramatically by State*, PEW, (Dec. 15, 2017), https://www.pewtrusts.org/en/research-and-analysis/articles/2017/12/15/prison-health-care-spending-varies-dramatically-by-state.
[15] See Bruce Wright, *Video Appears to Show Mississippi Prison's Inhumane Conditions Amid Deadly Violence,* NEWSONE (Jan. 6, 2020), https://newsone.com/3898382/mississippi-prison-violence-video-photos-parchman/.
[16] See Michelle Liu, *Leaked Mississippi prison photos of skimpy meals, moldy showers and exposed wiring prompt call for investigation,* MISS. TODAY (May 29, 2019), https://mississippitoday.org/2019/05/29/leaked-mississippi-prison-photos-of-skimpy-meals-moldy-showers-and-exposed-wiring-prompts-call-for-investigation/.
[17] See Michelle Liu, *No Water, No Lights and Broken Toilets: Parchman Health Inspection Uncovers Hundreds of Problems, Many Repeat Violations,* MISS. TODAY (Aug. 5, 2019), https://mississippitoday.org/2019/08/05/no-water-no-lights-and-broken-toilets-parchman-health-inspection-uncovers-hundreds-of-problems-many-repeat-violations.
[18] See Jerry Mitchell, *Justice Department investigating Mississippi prisons,* PROPUBLICA (Jan. 17, 2020), https://www.mississippicir.org/news/justice-department-investigating-mississippi-prisons

31. A 2019 Mississippi Department of Health inspection of Parchman found "more than 400 cells with problems such as flooding and leaks, lack of lights, power and water, broken toilets and sinks as well as missing pillows and mattresses." A myriad of other environmental hazards and violations were also discovered by the inspection, including exposed wiring and mildew.[19]

32. Despite mounting issues stemming from the MDOC's lack of funding, Mississippi has reduced its expenditure on the MDOC by $185 million since 2014.[20]

33. During the closing days of December 2019, the "pressure cooker" situation of which Defendant Hall spoke reached a breaking point at Parchman. Rampant violence has since overtaken the facility and placed Plaintiffs' safety in perilous danger.

34. Consequently, since January 1, 2020, at least nine inmates have died at Parchman,[21] and at least two other inmates have escaped from Parchman.[22]

35. Thus, the understaffing at Parchman presents an imminent risk to Plaintiffs. Every day presents the possibility of yet another preventable death.

36. Defendant Hall's warnings also came to bear throughout 2019, as according to MDOC Coroner Heather Burton, there have been at least four uprisings throughout 2019 similar to that which is currently unfolding at Parchman.[23]

---

[19] *See* Michelle Liu, *No Water, No Lights and Broken Toilets: Parchman Health Inspection Uncovers Hundreds of Problems, Many Repeat Violations,* MISS. TODAY (Aug. 5, 2019), https://mississippitoday.org/2019/08/05/no-water-no-lights-and-broken-toilets-parchman-health-inspection-uncovers-hundreds-of-problems-many-repeat-violations.

[20] *See* Jerry Mitchell, *We Reported on Troubled Prisons. Now, Officials and a Gang Have a Shared Goal: Reform*, PROPUBLICA (Sept. 6, 2019), https://www.propublica.org/article/we-reported-on-troubled-prisons-now-officials-and-a-gang-have-a-shared-goal-reform.

[21] *See* Amanda Watts, *Ninth Inmate Dies at Mississippi's Parchman Prison Since the Start of the Year,* CNN (Jan. 27, 2020) https://www.cnn.com/2020/01/27/us/mississippi-parchman-ninth-death/index.html.

[22] *See Two Prisoners Escape Mississippi Prison After Weeks of Violence*, WMC NEWS (Jan. 4, 2020), https://www.wmcactionnews5.com/2020/01/04/two-inmates-escape-mississippi-prison-after-week-violence/.

[23] *See* Bryan Davis Publisher, *One Confirmed Dead in Second Parchman Riot in as Many Days*, ENTERPRISE-TOCSIN (Jan. 2, 2020), https://www.enterprise-tocsin.com/front-page-slideshow-news/one-confirmed-dead-second-parchman-riot-many-days#sthash.O9C6Zrps.dpbs.

37. These conditions, in and of themselves, present a serious risk of imminent harm. In addition to Plaintiffs being particularly susceptible to violence and gang activity, they also face a substantial risk of developing chronic and serious illnesses due to the extraordinarily poor environmental conditions found at Parchman, and these conditions are violative of Plaintiffs civil rights.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs repeat and re-allege the allegations of the above paragraphs.

39. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), Plaintiffs Andrew Alexander, Terrence Bledsoe, Derrick Davis and Marvel Jackson (collectively, the "Parchman Class Representatives") bring this action on behalf of themselves and a class of all persons who have been, are currently, or will be, confined at the Mississippi State Penitentiary at Parchman.

40. The Class to be certified is defined as follows:

> "All persons that have been confined at the Mississippi State Penitentiary at Parchman during the Class Period of February 7, 2017 to the date of the fairness hearing or trial."

41. Parchman currently houses more than 3,000 prisoners and has a capacity of 3,560. The Proposed class also includes prisoners who will be confined at Parchman in the future to the extent the same conditions remain. Therefore, the Class is so numerous that joinder of all class members is impracticable.

42. There are multiple questions of law and fact common to the entire Parchman Class, including:

   a. Whether insufficient staffing at Parchman and the resulting unsafe conditions violate the Eighth and Fourteenth Amendments to the United States Constitution.

2

b.  Whether the squalid environmental conditions in which prisoners are confined at Parchman violates the Eighth and Fourteenth Amendments to the United States Constitution.

c.  Whether Defendants actions alleged herein violated the civil rights enumerated herein of Plaintiffs and the Class.

d.  The appropriate measure of damages.

43. Each of the Parchman Class Representative Plaintiffs, like all putative Parchman Class members, is subject to Defendants' failure to provide sufficient staffing and a safe environment at Parchman. The Parchman Class Representative Plaintiffs' claims, therefore, are typical of the Parchman Class' claims.

44. Each of the Parchman Class Representative Plaintiffs will fairly and adequately represent the interest of the Parchman class and will diligently serve as class representatives. Their interests are co-extensive with those of the Parchman Class and they have retained a team of counsel experienced with class actions alleging constitutional violations at correctional facilities. Putative Class Counsel possess the experience and resources necessary to fairly and adequately represent the Class.

45. The Parchman Class Representative Plaintiffs have been collectively subjected to the Defendants' actions and lack thereof as alleged in this complaint. Their endeavors to receive financial relief are therefore best served through collective class action litigation. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would substantially impede the ability of the other members not parties to the individual adjudications to protect their interests.

2

46. Defendants have acted, or failed to act, on grounds generally applicable to the entire Parchman Class. Specifically, Defendants are deliberately indifferent to the substantial risk of serious harm posed by the environmental conditions and understaffing at Parchman. Defendants' acts and omissions make financial relief appropriate as to the Parchman Class as a whole.

47. This action is maintainable as a class action because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Prosecution as a class action will eliminate the possibility for repetitious litigation. Treatment of this case as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate a civil rights claim such as that asserted in this Complaint. Plaintiffs are aware of no difficulties which would render the case unmanageable.

## **CAUSES OF ACTION**

## **COUNT ONE**

**42 U.S.C. § 1983: Eighth and Fourteenth Amendments of the United States Constitution Protection from Harm**

48. Plaintiffs repeat and re-allege the allegations of the above paragraphs.

49. By their policies and practices described herein, Defendants subject Plaintiffs to a substantial risk of serious harm by failing to protect them from violence, ignoring, by act or omission, emergency situations, and enabling violent attacks within prison walls. These policies and

practices have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the cause of Plaintiffs' ongoing deprivation of rights secured by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

50. Defendants have been and are aware of all of the deprivations complained of herein and have condoned or been deliberately indifferent to such conduct.

**COUNT TWO**

**42 U.S.C. § 1983: Eighth and Fourteenth Amendments of the United States Constitution Environmental Conditions**

51. Plaintiffs repeat and re-allege the allegations of the above paragraphs.

52. By their policies and practices described herein, Defendants subject Plaintiffs to a substantial risk of serious harm and injury from dangerous environmental conditions, including, but not limited to, vermin, exposure to black mold and other toxic substances that endanger health, sewage, filthy cells and fixtures, inability to shower, lack of electricity, sewage backup, unsafe food, broken plumbing, and exposed wiring. These policies and practices have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the cause of Plaintiff's ongoing deprivation of rights secured by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

53. Defendants have been and are aware of all of the deprivations complained of herein and have condoned or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs respectfully request that the Court:

a.  Certify the action as a class action pursuant to Fed. R. Civ. P. 23 and appoint Plaintiffs and Oliver Law Group PC as class representatives and class counsel respectively;

b.  Adjudge and declare that the acts, omissions, policies, and practices of Defendants, and their agents, employees, officials, and all persons acting in concert with them under color of state law or otherwise as described herein are in violation of the rights of the Plaintiffs under the Cruel and Unusual Punishments Clause of the Eighth Amendment to the United States Constitution and federal law;

c.  Issue a judgment against Defendants in an amount to be determined at trial, including compensatory and punitive damages in an amount that is fair, just, and reasonable and will hold Defendants liable for the civil rights violations alleged.

d.  Award Plaintiffs the costs of this suit, and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, and other applicable law;

e.  Retain jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction; and

f.  Grant Plaintiffs such other relief as the Court deems appropriate and just.

## JURY DEMAND

Plaintiffs hereby demand a jury trial.

Respectfully Submitted,

OLIVER LAW GROUP P.C.

Date: February 10, 2020

/s/ Alyson Oliver
Alyson Oliver (MI State Bar No. P55020)*

2

Attorneys for Plaintiffs
1647 W. Big Beaver Rd.
Troy, MI 48084
T: (248) 327-6556
E: notifications@oliverlawgroup.com
*Pro hac vice application pending

_____
Arthur Calderón (MSB No. 103917)
CALDERÓN LAW
Attorneys for Plaintiffs
103 S Court St #101
Cleveland, MS 38732
T: (662) 594-2439
E:  arthur@msdeltalaw.com

2