## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

ANDREW ALEXANDER,
HUBERT ANDERSON,
JOHN BARNES,
STEVEN BARNES,
JARRED BAYSINGER,
MAURICE BISHOP,
BENNY BLANSETT,
JASON BONDS,
ANTONIO BOYD,
MCKINLEY BRADY,
DARKEYUS BROWN,                                    **(SECOND AMENDED) CLASS ACTION**
CHRISTOPHER BURNS,                                 **COMPLAINT AND DEMAND FOR**
CEDRIC CALHOUN,                                    **JURY TRIAL**
and RAYSHON DARDEN,
on behalf of themselves
and all others similarly situated,


                         Plaintiffs,


vs.                                     Civil Action No. 4:20-cv-00021-DMB/JMV

PELICIA E. HALL, TOMMY TAYLOR,
MARSHAL TURNER, JEWORSKI MALLETT,
GLORIA PERRY, BRENDA S. COX,
TIMOTHY MORRIS, LEE SIMON,
MARYLEN STURDIVANT,
WENDELL BANKS, VERLENA FLAGG,
JEWEL MORRIS, LEATHER WILLIAMS,
EARNEST KING, LAQUITTA MEEKS,
STANLEY FLAGG, CLAUDE LEE,
PEGGY LATHAN,
OLIVIA WESTMORELAND,
CAREN WEBB, TERRY HAYWOOD,
AUDREY. FIELDS,
And JOHN AND JANE DOES (1-500)

                         Defendants.

_____/

## **INTRODUCTION**

1.  This is a class action complaint filed for damages on behalf of prisoners confined at the Mississippi State Penitentiary at Parchman ("Parchman") against Defendants PELICIA E. HALL, TOMMY TAYLOR, MARSHAL TURNER, JEWORSKI MALLETT, GLORIA PERRY, BRENDA S. COX, TIMOTHY MORRIS, LEE SIMON, MARYLEN STURDIVANT, WENDELL BANKS, VERLENA FLAGG, JEWEL MORRIS, LEATHER WILLIAMS, EARNEST KING, LAQUITTA MEEKS, STANLEY FLAGG, CLAUDE LEE, PEGGY LATHAN, OLIVIA WESTMORELAND, CAREN WEBB, TERRY HAYWOOD, AUDREY FIELDS, and JOHN AND JANE DOES (1-500), who allege as follows:

2.  Due to Mississippi's failure to properly fund, staff, and maintain its prisons and Defendants' individual personal actions and non-actions of Defendants' regarding the allegations herein, Plaintiffs are currently being confined in conditions which pose serious and imminent dangers to their safety and well-being.

3.  The shortage of correctional officers on staff at Parchman, and the individual personal actions and non-actions of Defendants' regarding the allegations herein, creates and enables an environment in which the inmates at Parchman are particularly susceptible to violence, gang influence, and prolonged states of anarchy.

4.  Parchman has been in an ongoing state of crisis. The inexcusable chaos which has ensued within the prison has been due in large part to the glaring insufficiency of correctional officers and the individual personal actions and non-actions of Defendants' regarding the allegations herein.

5. Since January 1, 2020, at least nine inmates have died at Parchman,[1] and at least two other inmates have escaped from Parchman.[2]

6. Also due to a lack of funding, Parchman is not equipped to effectively manage such crises. MDOC Coroner Heather Burton reports that so many individuals have been injured at Parchman that the on-site 128-bed medical unit cannot handle them all.[3] Coroner Burton also notes that there have been at least four uprisings throughout 2019 similar to that which is currently ongoing.[4]

7. Parchman is so severely underfunded and staffed with persons such as Defendants herein, that inmates are routinely denied access to basic amenities such as clean water, plumbing, and electricity. A slew of disturbing images and videos have surfaced showing that inmates are being required to defecate in plastic bags inside of their cells because their toilets are not functional.[5]

8. The underfunding and lack of Defendant's adherence to policies and/or customs that would have alleviated the complaints made herein, also forces people held in Mississippi's prison to live in squalor, endangering their physical and mental health. The prisons have failed to provide the basic necessities, such as a place to sleep. In Parchman, the units are subject to

---

[1] *See* Amanda Watts, *Ninth Inmate Dies at Mississippi's Parchman Prison Since the Start of the Year,* CNN (Jan. 27, 2020) https://www.cnn.com/2020/01/27/us/mississippi-parchman-ninth-death/index.html.
[2] *See Two Prisoners Escape Mississippi Prison After Weeks of Violence*, WMC NEWS (Jan. 4, 2020), https://www.wmcactionnews5.com/2020/01/04/two-inmates-escape-mississippi-prison-after-week-violence/.
[3] *See* China Lee, *One Inmate Killed, Others Injured During Riot at Parchman*, WLOX (Jan. 2, 2020), https://www.wlox.com/2020/01/02/fire-reported-state-prison-parchman/.
[4] *See* Bryan Davis Publisher, *One Confirmed Dead in Second Parchman Riot in as Many Days*, ENTERPRISE-TOCSIN (Jan. 2, 2020), https://www.enterprise-tocsin.com/front-page-slideshow-news/one-confirmed-dead-second-parchman-riot-many-days#sthash.O9C6Zrps.dpbs.
[5] *See* Nathan Dimoff, *Life inside Mississippi's Most Notorious Prison through the Eyes of an Inmate,* PINAC NEWS (January 16, 2020) https://newsmaven.io/pinacnews/eye-on-government/life-inside-mississippi-s-most-notorious-prison-through-the-eyes-of-an-inmate-OQEJVHKSwki-D4oseiCXCg

flooding. Black mold festers. Rats and mice infest the prison. Units lack running water and electricity for days at a time.

9.  These deaths and deplorable living conditions are the culmination of years of severe understaffing and neglect at Mississippi's prisons and workers such as Defendants here engaging in behavior that violates prisoner's civil rights. As Mississippi has incarcerated increasing numbers of people, it has dramatically reduced its funding of prisons. Nearly half of the prison guard slots for Mississippi's prisons remain unfilled. The Mississippi State Penitentiary at Parchman, a maximum-security prison built on the site of a former plantation, has only one-quarter of the corrections officers it needs and many that are employed, like Defendants here, have affirmatively taken action and non-action to create an even more violative environment that mere understaffing and neglect creates.

10. The Defendants have a constitutional obligation to protect the individuals in its custody from harm at the hands of officers or other incarcerated individuals. The conditions under which Parchman prisoners are currently being held are inhumane and unconstitutional. The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment and is violated when prison officials create, allow and fail to protect against prison-related violence and when prison conditions fail to meet basic human needs. The conditions present at Parchman constitute a grave and imminent danger to Plaintiffs, and in so doing violates their civil rights and causes the Plaintiff class to be entitled to money damages.

11. By this action, Plaintiffs seek money damages arising from these unconstitutional conditions, for themselves and all others similarly situated.

## PARTIES

### Plaintiffs

12. Plaintiffs repeat and re-allege the allegations of the above paragraphs.

13. Plaintiffs Andrew Alexander, Hubert Anderson, John Barnes, Steven Barnes, Jarred Baysinger, Maurice Bishop, Benny Blansett, Jason Bonds, Antonio Boyd, McKinley Brady, Darkeyus Brown, Christopher Burns, Cedric Calhoun, and Rayshon Darden, are all individuals have been or are currently incarcerated at the Mississippi State Penitentiary in Parchman, Mississippi ("Parchman") who bring this action on behalf of themselves and a class of prisoners currently confined or who will be confined at Parchman[6]. Plaintiffs have been and are at substantial risk of serious harm in the form of prison violence, and by the squalid conditions in which they are forced to live, and these conditions are violative of Plaintiffs civil rights.

14. Plaintiffs Andrew Alexander, Hubert Anderson, John Barnes, Steven Barnes, Jarred Baysinger, Maurice Bishop, Benny Blansett, Jason Bonds, Antonio Boyd, McKinley Brady, Darkeyus Brown, Christopher Burns, Cedric Calhoun, and Rayshon Darden, like all prisoners are forced to live in filthy, dangerous, and degrading conditions that has and will place them at a substantial risk of serious harm, and these conditions are violative of Plaintiffs civil rights.

### Defendants

15. Defendant PELICIA E. HALL was the Commissioner of the Mississippi Department of Corrections ("MDOC") from March 2017 until the end of December 2019. By statute, the MDOC is "vested with the exclusive responsibility for management and control of the

---

[6] At the time of the filing of the original complaint, all class representative Plaintiff's were incarcerated at Parchman. Since that time, some have been transferred to other facilities.

correctional system, and all properties belonging thereto" and "shall be responsible for the management of affairs of the correctional system and for the proper care, treatment, feeding, clothing and management of the offenders confined therein." Miss. Code Ann. § 47-5-23. The Commissioner has the duty and authority to do the following: "Establish the general policy of the Department" (§47-5-20); "implement and administer laws and policy related to corrections" (§47-5-28(a)); and "establish standards… and exercise the requisite supervision as it relates to correctional programs over all state-supported adult correctional facilities[.]" (§47-5-28(b)). As Commissioner, Defendant Hall had the ultimate responsibility for ensuring that all prisons under the jurisdiction of MDOC operate in compliance with state and federal law. Individuals at Parchman have sent numerous complaints to Defendant Hall, have numerous complaints about Defendant Hall's actions and non-actions personally, and Defendant Hall has personally inspected Parchman on multiple occasions. Under her leadership and to her knowledge, correctional officers have engaged in smuggling contraband, abusing inmates, refusing to process incoming or outgoing mail, enabling gang activity, giving cell keys to gang-affiliated inmates, allowing inhumane living conditions to develop and continue and other violations of Mississippi State law, MDOC policy, and prisoner rights. At all times relevant hereto, she has acted under color of state law. Additional allegations regarding Defendant Hall's conduct are set forth herein.

16. Defendant TOMMY TAYLOR is the Interim Commissioner of the Mississippi Department of Corrections as of January 2020. As Interim Commissioner, Defendant Taylor is bound by the same statutes, duties, and responsibilities which governed Defendant Hall as the Commissioner of the Mississippi Department of Corrections. The Interim Commissioner has the duty and authority to do the following: "Establish the general policy of the Department" (§47-5-20);

"implement and administer laws and policy related to corrections" (§47-5-28(a)); and "establish standards… and exercise the requisite supervision as it relates to correctional programs over all state-supported adult correctional facilities[.]" (§47-5-28(b)). As Interim Commissioner, Defendant Taylor has the ultimate responsibility for ensuring that all prisons under the jurisdiction of MDOC operate in compliance with state and federal law. Individuals at Parchman have sent numerous complaints to Defendant Taylor, have numerous complaints about Defendant Taylor's actions and non-actions personally, and Defendant Taylor has personally inspected Parchman on multiple occasions. Under his leadership and to his knowledge, correctional officers have engaged in smuggling contraband, abusing inmates, refusing to process incoming or outgoing mail, enabling gang activity, giving cell keys to gang-affiliated inmates, allowing inhumane living conditions to develop and continue and other violations of Mississippi State law, MDOC policy, and prisoner rights.  At all times relevant hereto, he has acted under color of state law.

17. Defendant MARSHAL TURNER is Superintendent of the Mississippi State Penitentiary. Defendant Turner manages the operations of Parchman. Defendant Turner is aware of the problems at Parchman and has failed to take reasonable measures to abate the substantial risks of serious harm set forth herein. Individuals at Parchman have sent numerous complaints to Defendant Turner, have numerous complaints about Defendant Turner's actions and non-actions personally, and Defendant Turner has personally inspected Parchman on multiple occasions. Additionally, Defendant Turner has knowingly and willfully hired and continued to employ correctional officers who are affiliated with gangs. Defendant Turner has knowingly and willfully taken direct and indirect action to enable gang activity within Parchman. Under his leadership and to his knowledge, correctional officers have engaged in smuggling

7

contraband, abusing inmates, refusing to process incoming or outgoing mail, enabling gang activity, giving cell keys to gang-affiliated inmates, allowing inhumane living conditions to develop and continue and other violations of Mississippi State law, MDOC policy, and prisoner rights. Further, Defendant Turner has needlessly and recklessly endangered the lives of inmates by denying them access to emergency medical treatment and/or medication necessary to protect or sustain their lives. At all times relevant hereto, Defendant Turner has acted under the color of state law.

18. Defendant JAWORSKI MALLETT is the Deputy Commissioner for Institutions at the MDOC. Mallett is responsible, together with the Interim Commissioner, for the daily functioning and administration of all MDOC institutions, including Parchman. Mallett has had for many years, and now has, direct knowledge of the conditions at Parchman, but Mallett has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Individuals at Parchman have sent numerous complaints to Defendant Mallett, have numerous complaints about Defendant Mallett's actions and non-actions personally, and Defendant Mallett has personally inspected Parchman on multiple occasions. Under his leadership and to his knowledge, correctional officers have engaged in smuggling contraband, abusing inmates, refusing to process incoming or outgoing mail, enabling gang activity, giving cell keys to gang-affiliated inmates, allowing inhumane living conditions to develop and continue and other violations of Mississippi State law, MDOC policy, and prisoner rights. At all times relevant hereto, he has acted under color of state law.

19. Defendant GLORIA PERRY is the Chief Medical Officer for the MDOC and leads its Office of Medical Compliance. She is the most senior medical official within the MDOC and reports directly to the Commissioner. Defendant Perry is responsible for approving all MDOC policies

related to healthcare, overseeing all specialty care provided to prisoners in MDOC custody, investigating and responding to complaints of inadequate care, and reviewing summaries of prisoner deaths while in custody. Yet, Perry has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Individuals at Parchman have sent numerous complaints to Defendant Perry, have numerous complaints about Defendant Perry's actions and non-actions personally, and Defendant Perry has personally inspected Parchman on multiple occasions. At all times relevant hereto, she has acted under color of state law.

20. Defendant BRENDA S. COX is the Chief Security Officer and a Warden at Parchman. Defendant Cox has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but she has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Individuals at Parchman have sent numerous complaints to Defendant Cox, have numerous complaints about Defendant Cox's actions and non-actions personally, and Defendant Cox has personally inspected Parchman on multiple occasions. During her time as Warden at Parchman, Defendant Cox knowingly and willfully hired and continued to employ correctional officers who are affiliated with gangs. Defendant Cox also knowingly and willfully took direct and indirect action to enable gang activity within Parchman. Under her leadership and to her knowledge, correctional officers have engaged in smuggling contraband, abusing inmates, refusing to process incoming or outgoing mail, enabling gang activity, giving cell keys to gang-affiliated inmates, allowing inhumane living conditions to develop and continue and other violations of Mississippi State law, MDOC policy, and prisoner rights. Further, Defendant Cox has needlessly and recklessly endangered the lives of inmates by denying them access to

emergency medical treatment and/or medication necessary to protect or sustain their lives. At all times relevant hereto, she has acted under color of state law.

21. Defendant TIMOTHY MORRIS is the Warden of Area I at Parchman. Defendant Morris has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but he has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Individuals at Parchman have sent numerous complaints to Defendant Morris, have numerous complaints about Defendant Morris's actions and non-actions personally, and Defendant Morris has personally inspected Parchman on multiple occasions. Additionally, Defendant Morris has knowingly and willfully hired and continued to employ correctional officers who are affiliated with gangs. Defendant Morris has knowingly and willfully taken direct and indirect action to enable gang activity within Parchman. Under his leadership and to his knowledge, correctional officers have engaged in smuggling contraband, abusing inmates, refusing to process incoming or outgoing mail, enabling gang activity, giving cell keys to gang-affiliated inmates, allowing inhumane living conditions to develop and continue and other violations of Mississippi State law, MDOC policy, and prisoner rights. Further, Defendant Morris has needlessly and recklessly endangered the lives of inmates by denying them access to emergency medical treatment and/or medication necessary to protect or sustain their lives. At all times relevant hereto, he has acted under color of state law.

22. Defendant WENDELL BANKS is the Warden of Area II at Parchman. Defendant Banks has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but he has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Individuals at Parchman have

sent numerous complaints to Defendant Banks, have numerous complaints about Defendant Banks's actions and non-actions personally, and Defendant Banks has personally inspected Parchman on multiple occasions. Additionally, Defendant Banks has knowingly and willfully hired and continued to employ correctional officers who are affiliated with gangs. Defendant Banks has knowingly and willfully taken direct and indirect action to enable gang activity within Parchman. Under his leadership and to his knowledge, correctional officers have engaged in smuggling contraband, abusing inmates, refusing to process incoming or outgoing mail, enabling gang activity, giving cell keys to gang-affiliated inmates, allowing inhumane living conditions to develop and continue and other violations of Mississippi State law, MDOC policy, and prisoner rights. Further, Defendant Banks has needlessly and recklessly endangered the lives of inmates by denying them access to emergency medical treatment and/or medication necessary to protect or sustain their lives.  At all times relevant hereto, he has acted under color of state law.

23. Defendant LEATHER WILLIAMS is the person in charge of the K9 Dog unit at Parchman. Defendant Williams has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but she has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. In addition, Defendant Williams is identified by Plaintiff's as an individual who caused contraband to infiltrate Parchman creating a dangerous environment where the presence of contraband caused violence amongst those who possessed it and those who want to possess it. Individuals at Parchman have sent numerous complaints to Defendant Williams, have numerous complaints about Defendant Williams's actions and non-actions personally, and

Defendant Williams has personally inspected Parchman on multiple occasions. At all times relevant hereto, she has acted under color of state law.

24. Defendant LEE SIMON is the Deputy Warden of Area I at Parchman. Defendant Simon has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but he has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Individuals at Parchman have sent numerous complaints to Defendant Simon, have numerous complaints about Defendant Simon's actions and non-actions personally, and Defendant Simon has personally inspected Parchman on multiple occasions Additionally, Defendant Simon has knowingly placed prisoners associated or formerly associated with a gang in positions of severe vulnerability to physical harm caused by rival gangs and gang members within the prison. Additionally, Defendant Simon has knowingly and willfully hired and continued to employ correctional officers who are affiliated with gangs. Defendant Simon has knowingly and willfully taken direct and indirect action to enable gang activity within Parchman. Under his leadership and to his knowledge, correctional officers have engaged in smuggling contraband, abusing inmates, refusing to process incoming or outgoing mail, enabling gang activity, giving cell keys to gang-affiliated inmates, allowing inhumane living conditions to develop and continue and other violations of Mississippi State law, MDOC policy, and prisoner rights. Further, Defendant Simon has needlessly and recklessly endangered the lives of inmates by denying them access to emergency medical treatment and/or medication necessary to protect or sustain their lives. At all times relevant hereto, he has acted under color of state law.

25. Defendant MARYLEN STURDIVANT is the Associate Warden of Area I at Parchman. Defendant Sturdivant has, and has had for many years, direct knowledge of the conditions at

Parchman, as described herein, but she has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Individuals at Parchman have sent numerous complaints to Defendant Sturdivant, have numerous complaints about Defendant Sturdivant's actions and non-actions personally, and Defendant Sturdivant has personally inspected Parchman on multiple occasions. Additionally, Defendant Sturdivant has knowingly and willfully hired and continued to employ correctional officers who are affiliated with gangs. Defendant Sturdivant has knowingly and willfully taken direct and indirect action to enable gang activity within Parchman. Under her leadership and to her knowledge, correctional officers have engaged in smuggling contraband, abusing inmates, refusing to process incoming or outgoing mail, enabling gang activity, giving cell keys to gang-affiliated inmates, allowing inhumane living conditions to develop and continue and other violations of Mississippi State law, MDOC policy, and prisoner rights. Further, Defendant Sturdivant has needlessly and recklessly endangered the lives of inmates by denying them access to emergency medical treatment and/or medication necessary to protect or sustain their lives. At all times relevant hereto, she has acted under color of state law.

26. Defendant VERLENA FLAGG is the Deputy Warden of Area II at Parchman. Defendant Flagg has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but she has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Individuals at Parchman have sent numerous complaints to Defendant Flagg, have numerous complaints about Defendant Flagg's actions and non-actions personally, and Defendant Flagg has personally inspected Parchman on multiple occasions. Additionally, Defendant Flagg has knowingly and willfully hired and continued to employ correctional officers who are affiliated with gangs. Defendant

13

Flagg has knowingly and willfully taken direct and indirect action to enable gang activity within Parchman. Under her leadership and to her knowledge, correctional officers have engaged in smuggling contraband, abusing inmates, refusing to process incoming or outgoing mail, enabling gang activity, giving cell keys to gang-affiliated inmates, allowing inhumane living conditions to develop and continue and other violations of Mississippi State law, MDOC policy, and prisoner rights. Further, Defendant Flagg has needlessly and recklessly endangered the lives of inmates by denying them access to emergency medical treatment and/or medication necessary to protect or sustain their lives. At all times relevant hereto, she has acted under color of state law.

27. Defendant JEWEL MORRIS is the Associate Warden of Area II at Parchman. Defendant Morris has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but she has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Individuals at Parchman have sent numerous complaints to Defendant Morris, have numerous complaints about Defendant Morris's actions and non-actions personally, and Defendant Morris has personally inspected Parchman on multiple occasions. Additionally, Defendant Morris has knowingly and willfully hired and continued to employ correctional officers who are affiliated with gangs. Defendant Morris has knowingly and willfully taken direct and indirect action to enable gang activity within Parchman. Under her leadership and to her knowledge, correctional officers have engaged in smuggling contraband, abusing inmates, refusing to process incoming or outgoing mail, enabling gang activity, giving cell keys to gang-affiliated inmates, allowing inhumane living conditions to develop and continue and other violations of Mississippi State law, MDOC policy, and prisoner rights. Further, Defendant Morris has needlessly and

recklessly endangered the lives of inmates by denying them access to emergency medical treatment and/or medication necessary to protect or sustain their lives. At all times relevant hereto, she has acted under color of state law.

28. Defendant EARNEST KING is a Correctional Officer at Parchman. Defendant King has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but he has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Additionally, Defendant King has, along with his fellow Correctional Officers, prevented or obstructed inmates from filing and receiving administrative and legal assistance by denying them access to ILAP and ARP forms. Further, Defendant King has knowingly placed prisoners associated or formerly associated with a gang in positions of severe vulnerability to physical harm caused by rival gangs and gang members within the prison. Individuals at Parchman have sent numerous complaints to Defendant King, have numerous complaints about Defendant King's actions and non-actions personally, and Defendant King has personally inspected Parchman on multiple occasions but failed to take any action to correct the inhumane living conditions inmates are forced to endure.. At all times relevant hereto, he has acted under color of state law.

29. Defendant LAQUITTA MEEKS is a Correctional Officer at Parchman. Defendant Meeks has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but she has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Additionally, Defendant Meeks has, along with her fellow Correctional Officers, prevented or obstructed inmates from filing and receiving administrative and legal assistance by denying them access to ILAP and ARP forms. Further, Defendant Meeks has knowingly placed prisoners associated or formerly

associated with a gang in positions of severe vulnerability to physical harm caused by rival gangs and gang members within the prison. Individuals at Parchman have sent numerous complaints to Defendant Hall, have numerous complaints about Defendant Meek's actions and non-actions personally, and Defendant Meeks has personally inspected Parchman on multiple occasions but failed to take any action to correct the inhumane living conditions inmates are forced to endure. At all times relevant hereto, she has acted under color of state law.

30. Defendant STANLEY FLAGG is a Correctional Officer at Parchman. Defendant Flagg has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but he has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Additionally, Defendant Flagg has, along with his fellow Correctional Officers, prevented or obstructed inmates from filing and receiving administrative and legal assistance by denying them access to ILAP and ARP forms. Individuals at Parchman have sent numerous complaints to Defendant Flagg, have numerous complaints about Defendant Flagg's actions and non-actions personally, and Defendant Flagg has personally inspected Parchman on multiple occasions. but failed to take any action to correct the inhumane living conditions inmates are forced to endure. Defendant Flagg has directly administered cruel and unusual punishment to inmates at his sole discretion, which has included, amongst other egregious acts, malicious attacks on inmates and filing reports of unverified complaints against inmates. At all times relevant hereto, he has acted under color of state law.

31. Defendant CLAUDE LEE is a Correctional Officer at Parchman. Defendant Lee has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but he has failed to take reasonable measures to remedy these conditions and abate the substantial

risks of serious harm to inmates, including Plaintiffs. Additionally, Defendant Lee has, along with his fellow Correctional Officers, prevented or obstructed inmates from filing and receiving administrative and legal assistance by denying them access to ILAP and ARP forms. Further, Defendant King has knowingly placed prisoners associated or formerly associated with a gang in positions of severe vulnerability to physical harm caused by rival gangs and gang members within the prison. Individuals at Parchman have sent numerous complaints to Defendant King, have numerous complaints about Defendant King's actions and non-actions personally, and Defendant King has personally inspected Parchman on multiple occasions but failed to take any action to correct the inhumane living conditions inmates are forced to endure. At all times relevant hereto, he has acted under color of state law.

32. Defendant PEGGY LATHAN is a Correctional Officer at Parchman. Defendant Lathan has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but she has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Additionally, Defendant Laten has, along with her fellow Correctional Officers, prevented or obstructed inmates from filing and receiving administrative and legal assistance by denying them access to ILAP and ARP forms. Further, Defendant Lathan has knowingly placed prisoners associated or formerly associated with a gang in positions of severe vulnerability to physical harm caused by rival gangs and gang members within the prison. Individuals at Parchman have sent numerous complaints to Defendant Lathan, have numerous complaints about Defendant Lathan's actions and non-actions personally, and Defendant Lathan has personally inspected Parchman on multiple occasions but failed to take any action to correct the inhumane living conditions

inmates are forced to endure..  At all times relevant hereto, she has acted under color of state law.

33. Defendant OLIVIA WESTMORELAND is a Correctional Officer at Parchman. Defendant Westmoreland has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but she has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Additionally, Defendant Westmoreland has, along with her fellow Correctional Officers, prevented or obstructed inmates from filing and receiving administrative and legal assistance by denying them access to ILAP and ARP forms. Further, Defendant Westmoreland has knowingly placed prisoners associated or formerly associated with a gang in positions of severe vulnerability to physical harm caused by rival gangs and gang members within the prison. Amongst with other Correctional Officers, Defendant Westmoreland has been observed giving gang members the keys to other prisoner's cells. Individuals at Parchman have sent numerous complaints to Defendant Westmoreland, have numerous complaints about Defendant Westmoreland's actions and non-actions personally, and Defendant Westmoreland has personally inspected Parchman on multiple occasions but failed to take any action to correct the inhumane living conditions inmates are forced to endure..  At all times relevant hereto, she has acted under color of state law.

34. Defendant CAREN WEBB is a Correctional Officer at Parchman. Defendant Webb has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but she has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Additionally, Defendant Webb has, along with her fellow Correctional Officers, prevented or obstructed inmates from

18

filing and receiving administrative and legal assistance by denying them access to ILAP and ARP forms. Further, Defendant Webb has knowingly placed prisoners associated or formerly associated with a gang in positions of severe vulnerability to physical harm caused by rival gangs and gang members within the prison. Amongst with other Correctional Officers, Defendant Webb has been observed giving gang members the keys to other prisoner's cells. Individuals at Parchman have sent numerous complaints to Defendant Webb, have numerous complaints about Defendant Webb's actions and non-actions personally, and Defendant Webb has personally inspected Parchman on multiple occasions but failed to take any action to correct the inhumane living conditions inmates are forced to endure. At all times relevant hereto, she has acted under color of state law.

35. Defendant TERRY HAYWOOD is a Correctional Officer at Parchman. Defendant Haywood has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but he has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Additionally, Defendant Haywood has, along with his fellow Correctional Officers, prevented or obstructed inmates from filing and receiving administrative and legal assistance by denying them access to ILAP and ARP forms. Further, Defendant Haywood has knowingly placed prisoners associated or formerly associated with a gang in positions of severe vulnerability to physical harm caused by rival gangs and gang members within the prison. Amongst with other Correctional Officers, Defendant Haywood has been observed giving gang members the keys to other prisoner's cells. Individuals at Parchman have sent numerous complaints to Defendant Haywood, have numerous complaints about Defendant Haywood's actions and non-actions personally, and Defendant Haywood has personally inspected Parchman on multiple occasions but failed to

take any action to correct the inhumane living conditions inmates are forced to endure. At all times relevant hereto, he has acted under color of state law.

36. Defendant AUDREY FIELDS is a Caseworker at Parchman. Through her frequent meetings with inmates, Defendant Fields has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but she has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Individuals at Parchman have sent numerous complaints to Defendant Fields, have numerous complaints about Defendant Fields's actions and non-actions personally, and Defendant Fields has personally inspected Parchman on multiple occasions but failed to take any action to correct the inhumane living conditions inmates are forced to endure. At all times relevant hereto, she has acted under color of state law.

37. JOHN AND JANE DOE DEFENDANTS are individual defendants who, acting under color of state law, are responsible, in whole or in part, for conditions at Parchman set forth in this Complaint, but who presently are unknown despite diligent efforts to discover their identity. Plaintiffs expressly reserve the right to substitute persons as Defendants in place of John and

## JURISDICTION AND VENUE

38. Plaintiffs repeat and re-allege the allegations of the above paragraphs.

39. This action arises under the United States Constitution and 42 U.S.C. § 1983. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4).

40. This Court further has proper jurisdiction of as this is a class action with an amount in controversy exceeding $5 million, exclusive of interest and costs, pursuant to 28 U.S.C. § 1332(d), 1453, 1711-1715.

41. Venue lies properly with this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District.

## FACTS

42. Plaintiffs repeat and re-allege the allegations of the above paragraphs.

43. The State of Mississippi has severely underfunded its prison system for years. This is a virtually undisputed fact. The occurrences alleged and facts stated herein are a symptom of Mississippi's well-documented failures to adequately fund, staff, and maintain its prisons.

44. The lack of funding has resulted in shortages of basic inmate necessities (i.e. clean water, functional plumbing and electricity, etc.) and prison staff to oversee and maintain control over the Parchman facility.

45. The Defendants have personally and individually taken direct action, and/or have failed to act in a manner that creates, maintains, allows and even encourages the conditions complained of herein viewed on an individual basis as well as the totality of the facts arising from the individual Defendants combined actions and non-actions.

46. In January 2019, Defendant Hall acknowledged that the near-capacity prison populations and extreme staff vacancy rates had created a "staffing crisis," which threatened a "pressure cooker type situation" in the MDOC's three state-run prisons, including Parchman.[7] At the time of her statement, Parchman had a 42% staff vacancy rate.[8] This staffing crisis has persisted since.

47. The staff that is at Parchman regularly and have inspected Parchman, including Defendants, have not and do not act in a manner consistent with ensuring Plaintiff's constitutional rights

---

[7] *See* MISS. DEP'T OF CORRS., *SMCI Staffing Crisis Prompts Lockdown and Visitation Cancellation*, January 25, 2019, https://www.mdoc.ms.gov/Pages/SMCI-Staffing-Crisis-Prompts-Lockdown-and-Visitation-Cancellation-.aspx.
[8]*See* MISS. DEP'T OF CORRS., *SMCI Staffing Crisis Prompts Lockdown and Visitation Cancellation*, January 25, 2019, https://www.mdoc.ms.gov/Pages/SMCI-Staffing-Crisis-Prompts-Lockdown-and-Visitation-Cancellation-.aspx

described herein are maintained. Rather, there is a consistent and intentional failure of action and persistent, intentional engagement of non-action amongst Defendants relative to the maintenance of Plaintiff's constitutional rights

48. Parchman has a maximum capacity of 3,560 prisoners and a current population of 3,252 prisoners.[9]

49. In April 2019, the United States Department of Justice Civil Rights Division issued a report in which it cited the Alabama Department of Corrections ("ADOC") for "egregious" and "dangerous" systemwide understaffing that contributed to likely violations of the Eighth Amendment rights of Alabama prisoners.[10] ADOC maintains a staffing ratio of 9.9 prisoners per correctional officer.[11] At the end of October 2019, the staffing ratio at Parchman (12.5 prisoners per correctional officer) was worse than Alabama's.[12]

50. Mississippi currently pays the lowest salaries for correctional staff of any state in the country. The MDOC offers entry level correctional officers a salary of $24,900;[13] a family of four surviving on this salary would fall below the Federal Poverty Level.[14]

---

[9] *See* MISS. DEP'T OF CORRS., Daily Inmate Population (Dec. 2019), https://www.mdoc.ms.gov/Admin-Finance/DailyInmatePopulation/2019-12%20Daily%20Inmate%20Population.pdf.

[10] *See* U.S. DEP'T OF JUSTICE, *Investigation of Alabama's State Prisons for Men* 9–10 (Apr. 2, 2019), https://www.justice.gov/crt/case-document/file/1149971/download.

[11] *See* Jerry Mitchell, *Violent, Ongoing Hell: Mississippi Prisons May Be Worse than Alabama's. Will DOJ Step in?*, CLARION LEDGER (Aug. 21, 2019), https://www.clarionledger.com/story/news/2019/08/21/mississippi-prisons-conditions-worse-than-alabama-doj-violence-cruel-unusual-punishment/2055478001/.

[12] *See* MISS. DEP'T OF CORRS., *Daily Inmate Population – October 2019* (Nov. 8, 2019), https://www.mdoc.ms.gov/Admin-Finance/Documents/2018%20Annual%20Report.pdf.

[13] *See* Jerry Mitchell, *Inside The Prison Where Inmates Set Each Other On Fire and Gangs Have More Power Than Guards*, PROPUBLICA (Aug. 19, 2019), https://www.propublica.org/article/leakesville-south-mississippi-correctional-institution-prison-gangs.

[14] *See* U.S. Department of Health and Human Services, *HHS Poverty Guidelines for 2020,* (January 15, 2020), https://aspe.hhs.gov/poverty-guidelines.

51. The State of Mississippi spends $3,770 per inmate, which is less than two-thirds of the $5,720 national median expenditure per inmate.[15]

52. The neglected state of prison facilities fosters an environment for violence. Parchman is overcrowded and has insufficient mattresses for its population, leaving inmates sleeping on the floor.[16] The prison units have been flooded and are now covered in black mold.[17] The physical facilities reflect the scars of neglect, with light fixtures missing and holes in the walls. Toilets back up, resulting in floors covered with raw sewage. Electricity and running water are provided only sporadically.[18] At Parchman, drinking water repeatedly has failed to meet federal safety standards. The prison has been cited for violating the Safe Drinking Water Act nearly 100 times since 2012, and the Environmental Protection Agency has cited the prison's sewage system for three years for violating the Clean Water Act.[19]

53. A 2019 Mississippi Department of Health inspection of Parchman found "more than 400 cells with problems such as flooding and leaks, lack of lights, power and water, broken toilets and sinks as well as missing pillows and mattresses." A myriad of other environmental hazards and violations were also discovered by the inspection, including exposed wiring and mildew.[20]

---

[15] *See* Matt McKillop, *Prison Health Care Spending Varies Dramatically by State*, PEW, (Dec. 15, 2017), https://www.pewtrusts.org/en/research-and-analysis/articles/2017/12/15/prison-health-care-spending-varies-dramatically-by-state.

[16] *See* Bruce Wright, *Video Appears to Show Mississippi Prison's Inhumane Conditions Amid Deadly Violence,* NEWSONE (Jan. 6, 2020), https://newsone.com/3898382/mississippi-prison-violence-video-photos-parchman/.

[17] *See* Michelle Liu, *Leaked Mississippi prison photos of skimpy meals, moldy showers and exposed wiring prompt call for investigation,* MISS. TODAY (May 29, 2019), https://mississippitoday.org/2019/05/29/leaked-mississippi-prison-photos-of-skimpy-meals-moldy-showers-and-exposed-wiring-prompts-call-for-investigation/.

[18] *See* Michelle Liu, *No Water, No Lights and Broken Toilets: Parchman Health Inspection Uncovers Hundreds of Problems, Many Repeat Violations,* MISS. TODAY (Aug. 5, 2019), https://mississippitoday.org/2019/08/05/no-water-no-lights-and-broken-toilets-parchman-health-inspection-uncovers-hundreds-of-problems-many-repeat-violations.

[19] *See* Jerry Mitchell, *Justice Department investigating Mississippi prisons,* PROPUBLICA (Jan. 17, 2020), https://www.mississippicir.org/news/justice-department-investigating-mississippi-prisons

[20] *See* Michelle Liu, *No Water, No Lights and Broken Toilets: Parchman Health Inspection Uncovers Hundreds of Problems, Many Repeat Violations,* MISS. TODAY (Aug. 5, 2019), https://mississippitoday.org/2019/08/05/no-water-no-lights-and-broken-toilets-parchman-health-inspection-uncovers-hundreds-of-problems-many-repeat-violations.

54. Despite mounting issues stemming from the MDOC's lack of funding, Mississippi has reduced its expenditure on the MDOC by $185 million since 2014.[21]

55. During the closing days of December 2019, the "pressure cooker" situation of which Defendant Hall spoke reached a breaking point at Parchman. Rampant violence has since overtaken the facility and placed Plaintiffs' safety in perilous danger. Defendants have engaged in, maintained and allowed this violence.

56. Consequently, since January 1, 2020, at least nine inmates have died at Parchman,[22] and at least two other inmates have escaped from Parchman.[23]

57. Thus, the understaffing and actions of Defendants herein in engaging, maintaining and allowing the circumstances described in this Complaint at Parchman presents an imminent risk to Plaintiffs. Every day presents the possibility of yet another preventable death.

58. Defendant Hall's warnings also came to bear throughout 2019, as according to MDOC Coroner Heather Burton, there have been at least four uprisings throughout 2019 similar to that which is currently unfolding at Parchman.[24]

59. These conditions, in and of themselves, present a serious risk of imminent harm. In addition to Plaintiffs being particularly susceptible to violence and gang activity, they also face a substantial risk of developing chronic and serious illnesses due to the extraordinarily poor

---

[21] *See* Jerry Mitchell, *We Reported on Troubled Prisons. Now, Officials and a Gang Have a Shared Goal: Reform*, PROPUBLICA (Sept. 6, 2019), https://www.propublica.org/article/we-reported-on-troubled-prisons-now-officials-and-a-gang-have-a-shared-goal-reform.
[22] *See* Amanda Watts, *Ninth Inmate Dies at Mississippi's Parchman Prison Since the Start of the Year,* CNN (Jan. 27, 2020) https://www.cnn.com/2020/01/27/us/mississippi-parchman-ninth-death/index.html.
[23] *See Two Prisoners Escape Mississippi Prison After Weeks of Violence*, WMC NEWS (Jan. 4, 2020), https://www.wmcactionnews5.com/2020/01/04/two-inmates-escape-mississippi-prison-after-week-violence/.
[24] *See* Bryan Davis Publisher, *One Confirmed Dead in Second Parchman Riot in as Many Days*, ENTERPRISE-TOCSIN (Jan. 2, 2020), https://www.enterprise-tocsin.com/front-page-slideshow-news/one-confirmed-dead-second-parchman-riot-many-days#sthash.O9C6Zrps.dpbs.

environmental conditions found at Parchman, and these conditions are violative of Plaintiffs civil rights.

60. Moreover, the combined actions and non-actions taken individually and personally by each named Defendant in creating the conditions described herein, in refusing to act on personal knowledge of the conditions described herein, in refusing to act on the personal receipt of and personal knowledge requests made by inmates to correct the conditions described herein, and by taking affirmative actions individually and personally to maintain the conditions described herein as status quo has resulted in the overarching violations of civil rights of prisoners on a class wide basis as described herein.

**Exhaustion of Administrative Remedies**

61. Plaintiffs have exhausted, or should be deemed to have exhausted, all administrative remedies available to them.

62. The administrative remedy program at Parchman ("ARP"), which is intended to provide Plaintiffs a mechanism for their grievances to be heard and acted upon within 90 days, is so broken and ineffective that essentially there is no ARP at Parchman.

63. Plaintiffs do not have ready access to ARP forms. The forms must be requested from a guard. Since guards know that ARP grievances often concern guard behavior, guards predictably are not enthusiastic about providing forms to inmates. If an inmate cannot get a form, the grievance process for that inmate ends immediately. If the inmate does get his hands on a form, he still must have the guard's assistance to collect the form and ensure it reaches the ARP boxes. Guards routinely are witnessed discarding or ripping up completed ARP forms. If a completed form does find its way to the box labeled ARP, it often languishes for months before reaching the ARP administrator, if ever. For the few forms fortunate enough to actually be reviewed by

the administrator, most are denied. The lengths to which Defendants will go to deny grievances are comical. For example, a grievance will be denied if an inmate mentions both leaks and water, or rats and mold, as these are deemed to be a violation of the rule requiring only one grievance per form. Even more insidious, many ARP forms are not addressed by the administrator until after the appeal deadline has passed. In this way, Defendants ensure that inmate grievances that are denied cannot be appealed.

64. Based on information and belief, many Plaintiffs have been held in isolation in segregated units for months or years. These Plaintiffs, as a product of their segregated incarceration, have been denied access to ARP forms while in punitive units. Given that these Plaintiffs have been precluded from receiving ARP forms during their segregated incarceration, and that their period of segregated incarceration has lasted more than 90 days, these Plaintiffs should be deemed to have exhausted their administrative remedies.

65. Notwithstanding the foregoing, Plaintiffs have affirmed by declaration that they collectively have filed ARP grievances on substantially all of the issues touched by this Complaint, and these grievances either have been denied, never were received, or never were acted upon by the ARP administrator and Defendants.

66. A foundational assumption underlying the concept of exhaustion is that genuine administrative remedies, and the due process they are accorded, are actually available to inmates. If administrative remedies are not genuinely available, then Plaintiffs cannot be held to the exhaustion standard as a bar to the courts. Parchman's ARP is a façade. It is a remedy procedure in name only. In fact, Parchman's ARP is designed intentionally to provide the illusion of an administrative remedy program without affording grievances any consideration at all, much less actual due process. Without due process vis-à-vis a legitimate administrative

remedy program, Plaintiffs cannot be divested of their rights to the courts. Accordingly, Plaintiffs respectfully request that the Court find that Plaintiffs have exhausted the administrative remedies available to them at Parchman, which are effectively none.

## **CLASS ACTION ALLEGATIONS**

67. Plaintiffs repeat and re-allege the allegations of the above paragraphs.

68. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(3), Plaintiffs (collectively, the "Parchman Class Representatives") bring this action on behalf of themselves and a class of all persons who have been, are currently, or will be, confined at the Mississippi State Penitentiary at Parchman.

69. The Class to be certified is defined as follows:

> "All persons that have been confined at the Mississippi State Penitentiary at Parchman during the Class Period of February 7, 2017 to the date of the fairness hearing or trial."

70. Parchman currently houses more than 3,000 prisoners and has a capacity of 3,560. The Proposed class also includes prisoners who will be confined at Parchman in the future to the extent the same conditions remain. Therefore, the Class is so numerous that joinder of all class members is impracticable.

71. There are multiple questions of law and fact common to the entire Parchman Class, including:

   a. Whether Defendants created, maintained and allowed insufficient staffing and maintained and/or were staffing engaged in the activity described herein at Parchman and the resulting unsafe conditions violate the Eighth and Fourteenth Amendments to the United States Constitution.

27

b. Whether Defendants created, maintained and allowed the squalid environmental conditions in which prisoners are confined at Parchman violates the Eighth and Fourteenth Amendments to the United States Constitution.

c. Whether Defendants created, maintained and allowed safety concerns in which prisoners are confined at Parchman violates the Eighth and Fourteenth Amendments to the United States Constitution.

d. Whether Defendants actions alleged herein violated the civil rights enumerated herein of Plaintiffs and the Class.

e. The appropriate measure of damages.

72. Each of the Parchman Class Representative Plaintiffs, like all putative Parchman Class members, is subject to Defendants' actions and non-actions in failing to provide sufficient staffing and a safe environment at Parchman. The Parchman Class Representative Plaintiffs' claims, therefore, are typical of the Parchman Class' claims.

73. Each of the Parchman Class Representative Plaintiffs will fairly and adequately represent the interest of the Parchman class and will diligently serve as class representatives. Their interests are co-extensive with those of the Parchman Class and they have retained a team of counsel experienced with class actions alleging constitutional violations at correctional facilities. Putative Class Counsel possess the experience and resources necessary to fairly and adequately represent the Class.

74. The Parchman Class Representative Plaintiffs have been collectively subjected to the Defendants' actions and lack thereof as alleged in this complaint. Their endeavors to receive financial relief are therefore best served through collective class action litigation. Prosecuting separate actions by or against individual class members would create a risk of adjudications

with respect to individual class members that, as a practical matter, would substantially impede the ability of the other members not parties to the individual adjudications to protect their interests.

75. Defendants have acted, or failed to act, on grounds generally applicable to the entire Parchman Class. Specifically, Defendants are deliberately indifferent to the substantial risk of serious harm posed by the environmental conditions and insufficient staffing at Parchman. Defendants' acts and omissions make financial relief appropriate as to the Parchman Class as a whole.

76. This action is maintainable as a class action because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Prosecution as a class action will eliminate the possibility for repetitious litigation. Treatment of this case as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate a civil rights claim seeking damages such as that asserted in this Complaint. Plaintiffs are aware of no difficulties which would render the case unmanageable.

## CAUSES OF ACTION

### COUNT ONE

**42 U.S.C. § 1983: Eighth and Fourteenth Amendments of the United States Constitution**
**Protection from Harm**

77. Plaintiffs repeat and re-allege the allegations of the above paragraphs.

78. By their policies and practices, actions and non-actions described herein, Defendants subject Plaintiffs to a substantial risk of serious harm by failing to protect them from violence, ignoring, by act or omission, emergency situations, and enabling violent attacks within prison walls. These policies and practices, actions and non-actions, have been and continue to be implemented by Defendants personally and their agents, officials, employees, and all persons acting in concert with them under color of state law, and are the cause of Plaintiffs' ongoing deprivation of rights secured by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

79. Defendants have been and are aware of all of the deprivations complained of herein and have condoned, created, maintained, allowed or been deliberately indifferent to such conduct.

### COUNT TWO

**42 U.S.C. § 1983: Eighth and Fourteenth Amendments of the United States Constitution**
**Environmental Conditions**

80. Plaintiffs repeat and re-allege the allegations of the above paragraphs.

81. By their policies and practices, actions and non-actions described herein, Defendants subject Plaintiffs to a substantial risk of serious harm and injury from dangerous environmental conditions, including, but not limited to, vermin, exposure to black mold and other toxic substances that endanger health, sewage, filthy cells and fixtures, inability to shower, lack of

30

electricity, sewage backup, unsafe food, broken plumbing, leaking roofs and exposed wiring. These policies and practices, actions and non-actions, have been and continue to be implemented by Defendants personally and their agents, officials, employees, and all persons acting in concert with them under color of state law, and are the cause of Plaintiff's ongoing deprivation of rights secured by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

82. Defendants have been and are aware of all of the deprivations complained of herein and have condoned, created, maintained, allowed or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs respectfully request that the Court:

a. Certify the action as a class action pursuant to Fed. R. Civ. P. 23 and appoint Plaintiffs as class representatives and the lawyers of Oliver Law Group and Calderon Law as class counsel respectively;

b. Adjudge and declare that the acts, omissions, policies, and practices of Defendants personally, and their agents, employees, officials, and all persons acting in concert with them under color of state law or otherwise as described herein are in violation of the rights of the Plaintiffs under the Cruel and Unusual Punishments Clause of the Eighth Amendment and Fourteenth Amendment to the United States Constitution and federal law;

c. Issue a judgment against Defendants in an amount to be determined at trial, including compensatory and punitive damages in an amount that is fair, just, and reasonable and will hold Defendants liable for the civil rights violations alleged.

d. Award Plaintiffs the costs of this suit, and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, and other applicable law; and

e.  Grant Plaintiffs such other relief as the Court deems appropriate and just.

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial.

Respectfully Submitted,

OLIVER LAW GROUP P.C.

Date: May 4, 2020

/s/ Alyson Oliver
Alyson Oliver (MI State Bar No. P55020)*
OLIVER LAW GROUP PC
Attorneys for Plaintiffs
1647 W. Big Beaver Rd.
Troy, MI 48084
T: (248) 327-6556
E: notifications@oliverlawgroup.com
*Pro hac vice admission

Arthur Calderón
CALDERÓN LAW
Attorneys for Plaintiffs
103 S Court St #101
Cleveland, MS 38732
T: (662) 594-2439
E:  arthur@msdeltalaw.com