IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**ANDREW ALEXANDER, et al.**                                                **PLAINTIFFS**

**V.**                              **NO. 4:20-CV-21-DMB-JMV**

**PELICIA E. HALL, et al.**                                                 **DEFENDANTS**

## ORDER

After the Court granted the defendants' motion to dismiss the operative complaint as a shotgun pleading, the plaintiffs in this prison civil rights case filed a fifth amended complaint challenging the conditions of their confinement and alleging a conspiracy to deprive them of certain constitutional rights. The defendants again moved to dismiss. For the reasons explained below, dismissal will be granted in part and denied in part.

**I**
**Procedural History**

On May 4, 2020, the plaintiffs,[1] fourteen current or former prisoners at the Mississippi State Penitentiary at Parchman ("Parchman"), "on behalf of themselves and all others similarly situated," filed a "(Second Amended) Class Action Complaint and Demand for Jury Trial"[2] in the United States District Court for the Northern District of Mississippi against numerous individuals associated with the Mississippi Department of Corrections ("MDOC") and Parchman,[3]

---

[1] The named plaintiffs are Andrew Alexander, Hubert Anderson, John Barnes, Steven Barnes, Jarred Baysinger, Maurice Bishop, Benny Blansett, Jason Bonds, Antonio Boyd, McKinley Brady, Darkeyus Brown, Christopher Burns, Cedric Calhoun, and Rayshon Darden. Doc. #17 at 1.

[2] As explained in the Court's March 2, 2021, order, "[a]lthough titled as their second amended complaint, it is actually the fourth complaint filed in this action." Doc. #70 at 1 n.2.

[3] The defendants are Pelicia E. Hall, Tommy Taylor, Marshal Turner, Jeworski Mallett, Gloria Perry, Brenda S. Cox, Timothy Morris, Lee Simon, Marylen Sturdivant, Wendell Banks, Verlena Flagg, Jewel Morris, Leather Williams, Earnest King, Laquitta Meeks, Stanley Flagg, Claude Lee, Peggy Lathan, Olivia Westmoreland, Caren Webb, Terry Haywood, Audrey Fields, and John and Jane Does (1-500). Doc. #17 at 1.

challenging the conditions of their confinement. Doc. #17. The defendants (except for Marshal Turner, who had not answered the complaint or otherwise appeared in the case) moved to dismiss the claims, arguing that the plaintiffs lacked standing and otherwise failed to state a claim because, among other things, the complaint was a shotgun pleading. Doc. #45; Doc. #46 at 1–2, 14–15.

On March 2, 2021, the Court granted the motion to dismiss in part. Doc. #70. Addressing first the standing argument, the Court concluded that jurisdiction existed because of "the overlap between the standing challenge and the merits of the plaintiffs' claims." *Id*. at 4. Then turning to the merits of the claims, the Court deemed the complaint an improper shotgun pleading and dismissed it without prejudice to allow the plaintiffs an opportunity to "remedy [the] pleading deficiencies." *Id.* at 7.

On March 10, 2021, the plaintiffs moved for an entry of default against Turner. Doc. #73. Four days later, the Clerk of Court entered the requested default. Doc. #74.

On March 16, 2021, the plaintiffs filed a "5th Amended Complaint and Jury Demand" against the same defendants. Doc. #75. The fifth amended complaint alleges (1) a 42 U.S.C. § 1983 claim that the conditions at Parchman are a violation of the plaintiffs' Eighth and Fourteenth Amendment rights and (2) a 42 U.S.C. § 1985(3) claim that the defendants "conspired amongst themselves, and with private persons who are members of various gangs, to deprive Plaintiffs of the equal protection of laws guaranteed by the Fourteenth Amendment." *Id.* at 16–43. Two weeks later, all the defendants except Turner moved to dismiss the fifth amended complaint. Doc. #77. The motion is fully briefed. Docs. #78, #80, #85.

## II
## Default Against Turner

The Court's March 2 order dismissed the entire second amended complaint rather than dismissing claims against specific defendants. Doc. #70 at 7. Because the default against Turner

was not entered until after the complaint was dismissed, the defendants assert that "[t]he holding by the Court that Plaintiffs' complaint was due to be dismissed presumably applied equally to all defendants, including Turner." Doc. #78 at 1 n.1. The Court agrees. Because there was no operative complaint at the time the default against Turner was entered since the fifth amended complaint had not yet been filed, the default against Turner is set aside.[4]

### III
### Standing

The defendants, presenting arguments nearly identical to those in their first motion to dismiss, argue the plaintiffs lack standing because they (1) "have not made any specific allegations to place themselves among those inmates allegedly injured at Parchman," Doc. #78 at 9; and (2) "[e]ven assuming Plaintiffs alleged an injury, they still cannot satisfy the causation requirement for standing" because they "have not alleged any particular conduct by any particular Defendant" that is traceable to the injury, *id*. at 10. As the Court explained in deciding the standing issue in the first motion to dismiss, "[t]hese arguments go to the heart of a § 1983 claim against an individual defendant," creating an "overlap between the standing challenge and the merits of the plaintiffs' claims." Doc. #70 at 4. For the same reasons, the Court concludes that jurisdiction exists and that the defendants' arguments should be considered a part of their challenge to the merits.

### IV
### Failure to State a Claim

The defendants argue the fifth amended complaint fails to state a claim under either § 1983 or § 1985. Doc. #78 at 11, 26.

---

[4] To date, Turner still has not appeared in this action.

3

To withstand a motion to dismiss for failure to state a claim, "a complaint must allege more than labels and conclusions, as a formulaic recitation of the elements of a cause of action will not do. It must state a plausible claim for relief, rather than facts merely consistent with liability." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (cleaned up). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*

### A. Factual Allegations

Mississippi's "failure to properly fund, staff, and maintain its prisons" has resulted in "an ongoing state of crisis" at Parchman. Doc. #75 at 2–3. Inside the prison, "the units are subject to flooding[, b]lack mold festers[, r]ats and mice infest the prison[, and u]nits lack running water and electricity for days at a time." *Id.* at 4. Toilets overflow, causing raw sewage to spill onto the floor; inmates are forced to "void in sinks … or in plastic bags;" "[r]ats and cockroaches crawl over inmates while they sleep;" and the food and water are contaminated. *Id.* at 18–19. MDOC has recognized one portion of the prison, Unit 29, as "unsafe for staff and inmates because of age and general deterioration." *Id.* at 17. Inmates in that unit "were not permitted to shower for weeks beginning on Christmas day … 2019." *Id.* at 17. In the kitchen, there are "containers of dried, spoiled and molded food, flies and other pests, food maintained in coolers at unsafe temperatures, collapsing ceilings and other unhealthy food preparation and storage conditions." *Id.* at 17.

The prison "has only one-quarter of the corrections officers it needs" and multiple uprisings have occurred in recent years. *Id.* at 3–4. The guards "allow inmates access to cell keys and access to main controls" facilitating attacks on fellow inmates, and the guards smuggle "contraband into the facility, which is then used as bait and rewards in gang activities." *Id.* at 19.

4

The defendants hold various positions at MDOC and Parchman. Pelicia E. Hall was the Commissioner of MDOC from March 2017 until December 2019. *Id.* at 8. Tommy Taylor became the Interim Commissioner of MDOC in January 2020. *Id.* Jaworski Mallet is the Deputy Commissioner for Institutions at MDOC. *Id.* At Parchman, Marshal Turner is the Superintendent and Brenda S. Cox is the Chief Security Officer as well as a warden. *Id.* Timothy Morris and Wendell Banks are wardens; Lee Simon and Verlena Flagg are deputy wardens; and Marylen Sturdivant and Jewel Morris are associate wardens. *Id.* at 9. Leather Williams is in charge of the K9 Dog unit. *Id.* Earnest King, Laquitta Meeks, Stanley Flagg, Claude Lee, Peggy Lathan, Olivia Westmoreland, Caren Webb, and Terry Haywood are all correctional officers at the prison. *Id.* Audrey Fields is a caseworker at Parchman. *Id.* at 9.

Each of these individuals is aware of the conditions at Parchman. *Id.* at 20–35. Hall and Taylor, during their respective service as Commissioner, had the power to "[e]stablish the general policy of the Department; implement and administer laws and policy related to corrections; and establish standards and exercise the requisite supervision as it relates to correctional programs over all state-supported adult correctional facilities." *Id.* at 20–21 (quoting Miss. Code §§ 47-5-20, 47-5-28). Mallett and Taylor are responsible for "the daily functioning and administration of all MDOC institutions, including Parchman." *Id.* at 23.

In their positions at the prison, Turner, Cox, T. Morris, Banks, Simon, Sturdivant, V. Flagg, and J. Morris have "hired and continued to employ persons who are affiliated with gangs." *Id.* at 22–28. King, Meeks, S. Flagg, Lee, Lathan, Westmoreland, Webb, and Haywood have "prevented or obstructed inmates from filing and receiving administrative and legal assistance by denying them access" to the necessary forms. *Id.* at 29–35. Additionally, S. Flagg has attacked inmates and filed reports of unverified complaints against inmates, *id.* at 31; and Westmoreland, Webb,

5

and Haywood gave gang members keys to other inmates' cells, *id.* at 33–35. Williams "caused, causes and facilitates contraband to infiltrate Parchman." *Id.* at 26.

### B. Gloria Perry

The plaintiffs fail to allege any factual allegations against Gloria Perry in the fifth amended complaint. *See generally* Doc. #75. Indeed, Perry's name appears only in the caption. *See* Doc. #75 at 1. Because the plaintiffs fail to allege anything against Perry much less how Perry is connected to MDOC or Parchman or how her conduct is relevant to the allegations in the fifth amended complaint, the claims against Perry are properly dismissed. *See Whitty v. New Orleans Police Dept.*, 239 F. App'x 89, 90 (5th Cir. 2007) (affirming dismissal where complaint did not "allege any facts that would substantiate [the plaintiff's] conclusory claim that her [constitutional] rights were violated").

### C. 42 U.S.C. § 1983 Claims

"To state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854–55 (5th Cir. 2012) (internal quotation marks omitted). The defendants named must have been "either personally involved in the constitutional violation" or their acts must be "causally connected" to the violation. *DeMarco v. Davis*, 914 F.3d 383, 390 (5th Cir. 2019).

The fifth amended complaint alleges the individual defendants were acting under color of state law at all relevant times. Accordingly, the question is whether the plaintiffs have alleged a violation of a constitutional right in which the defendants were personally involved or that is at least casually connected to the defendants' actions.

6

The plaintiffs allege the conditions at Parchman violate their Eighth Amendment right against cruel and unusual punishment. Doc. #75 at 20. To establish an Eighth Amendment violation, the plaintiffs must show that they are "incarcerated under conditions posing a substantial risk of serious harm and that the prison officials acted with deliberate indifference to the inmate[s'] safety." *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (internal quotation marks omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

> Deliberate indifference is an extremely high standard to meet. A prison official displays deliberate indifference only if he (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it. Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.

*Torres v. Livingston*, 972 F.3d 660, 663 (5th Cir. 2020).

Where, as here, a "complaint includes a proposed class action [but] no class action has been certified. … 'each plaintiff's case must be examined separately.'" *Amos v. Cain*, No. 4:20-CV-7-DMB-JMV, 2021 WL 1080518, at *2 (N.D. Miss. Mar. 19, 2021) (alterations omitted) (quoting *Crawford v. W. Elec. Co., Inc.*, 614 F.2d 1300, 1317 (5th Cir. 1980)); *see Chainey v. Street*, 523 F.3d 200, 218 (3rd Cir. 2008) ("This is not a class action suit; each plaintiff must prove he or she is entitled to damages."). Thus, for the plaintiffs here to sufficiently allege that the defendants acted with the requisite deliberate indifference to establish a violation of their Eighth Amendment rights, each plaintiff must allege that (1) *each* defendant knew of a substantial risk of serious bodily harm to that plaintiff and (2) disregarded that risk.

The plaintiffs claim that as inmates at Parchman, they were exposed to vermin, black mold, filthy cells, unsafe food, leaking roofs, and exposed wiring, as well as experienced an inability to shower, lack of electricity, and sewage backup. These conditions, of which the defendants allegedly were aware and failed to take any action to correct, pose a substantial risk of bodily harm

7

to the plaintiffs. *See Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) ("[F]ilthy cell conditions may constitute an Eighth Amendment violation."); *Dockery v. Fischer*, 253 F. Supp. 3d 832, 853 (S.D. Miss. 2015) ("Thus, courts have found that prison conditions including inadequate lighting, non-functional plumbing, the presence of vermin, inadequate ventilation, the presence of fire and other safety hazards, inadequate cleaning supplies, and forced segregation and isolation have violated prisoners' Eighth Amendment rights.").

The plaintiffs also allege that due to understaffing and involvement by guards in gang activities, "[r]ampant violence has … overtaken the facility" and "since January 1, 2020, at least nine inmates have died at Parchman" as a result. Doc. #75 at 18. An excessive risk of violence in a facility "creates a substantial risk of serious harm" to the inmates such that "confinement in a prison where violence and terror reign is actionable" under the Eighth Amendment. *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 128 (2d Cir. 2013) (known gang activity within facility places prisoners at substantial risk of serious harm).

Because the plaintiffs have pled that each defendant knew of conditions that exposed them as inmates to a substantial risk of serious bodily harm and that each failed to take any action to correct those conditions, they have sufficiently alleged that each defendant acted with deliberate indifference and thus have stated a claim for an Eighth Amendment violation based upon the conditions of their confinement.[5]

### D. 42 U.S.C. § 1985(3) Claims

The plaintiffs allege the defendants "conspired amongst themselves, and with private persons who are members of various gangs, to deprive Plaintiffs of the equal protection of laws

---

[5] However, the defendants may present evidence later in this litigation to show that they took "reasonable measures" to abate any known risk, such that they did not display deliberate indifference. *Torres v. Livingston*, 972 F.3d 660, 663 (5th Cir. 2020).

guaranteed by the Fourteenth Amendment by turning Parchman into a lawless hellscape dominated by gangs and their benefactors within the Mississippi Department of Corrections." Doc. #75 at 39. The defendants argue these claims are barred under the intracorporate conspiracy doctrine, are based on conclusory allegations, and are due to be dismissed because "prison inmates do not constitute a suspect or protected class for equal protection purposes" and "there are no allegations regarding Plaintiffs' or Defendants' race(s) or that the conspiracy was driven by racial animus." Doc. #78 at 27–31. Relying on the United States Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), the plaintiffs respond that the Fifth's Circuit precedent requiring a racial animus for § 1985(3) claims "is clearly incorrect" because the statute does not contain language showing such a requirement. Doc. #80 at 19–20. Additionally, the plaintiffs argue that the intracorporate conspiracy doctrine does not apply because "the Supreme Court refused to apply it;" the defendants conspired with private gang members; and the plaintiffs "were deprived [of] the equal protection of the laws compared to inmates at other facilities under rational basis because there is no rational basis for facilitating and encouraging gang activities in a prison." *Id.* at 20–21. The defendants reply that these arguments are without merit. Doc. #85 at 2.

> To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Tex. Democratic Party v. Abbott*, 961 F.3d 389,410 (5th Cir. 2020) (alteration omitted). In the Fifth Circuit, "the only conspiracies actionable under section 1985(3) are those motivated by racial animus." *Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) (collecting cases).

The plaintiffs do not make any allegations that the alleged conspiracy was motivated by racial animus but rather seem to assert that their class—prisoners at Parchman—is treated

9

differently than prisoners elsewhere. Under Fifth Circuit precedent,[6] such allegations are insufficient to state a claim under § 1985(3). *See id.* (plaintiff alleging he belonged "to a class of individuals who have felony convictions and/or were previously incarcerated" failed to state a claim under § 1985(3)); *Jones v. Tyson Foods, Inc.*, 971 F. Supp. 2d 648, 668 (N.D. Miss. 2013) ("The Fifth Circuit has stated that prisoners are not a suspect or quasi-suspect class." (cleaned up) (collecting cases)).

### E. Summary of Claims

The plaintiffs' claims against Perry will be dismissed due to the plaintiffs' failure to assert any factual allegations against her. And because the plaintiffs have failed to state a claim under § 1985(3), such claims will be dismissed. As the plaintiffs have adequately stated a claim under § 1983 for a violation of their Eighth Amendment rights, the Court must next determine if the defendants are entitled to qualified immunity.

## V
## Qualified Immunity

The defendants argue they are entitled to qualified immunity because the plaintiffs "have not alleged a violation of a clearly established law in this case." Doc. #78 at 19.

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Mayfield v. Currie*, 976 F.3d 482, 486 (5th Cir. 2020). "To defeat the defense of qualified immunity at the motion to dismiss stage, [the plaintiffs] must plausibly allege a violation of a constitutional right that was clearly established at the time of the purported violation." *Morgan v. Chapman*, 969 F.3d 238, 245 (5th Cir. 2020). "For a right to be clearly established under the second step of the qualified

---

[6] The plaintiffs' argument that Fifth Circuit precedent requiring a racial animus is contrary to the language of the statute does not change the fact that this Court "is bound to faithfully apply Fifth Circuit precedent." *Leal v. Azar*, 489 F. Supp. 3d 593, 601 (N.D. Tex. 2020).

immunity analysis, the contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bishop v. Arcuri*, 674 F.3d 456, 466 (5th Cir. 2012). "The law can be clearly established even without prior cases that are on all fours with the present case, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Johnson*, 385 F.3d at 524–25 (internal quotation marks omitted).

"When, as here, a qualified immunity defense is asserted in a motion to dismiss, the district court must—as always—do no more than determine whether the plaintiff has filed a short and plain statement of his complaint, a statement that rests on more than conclusions alone." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (cleaned up). "A plaintiff is required by his pleadings to state facts which, if proved, would defeat a claim of immunity." *Id.*

Above, the Court found the plaintiffs plausibly alleged the defendants violated their constitutional rights. So the Court now must determine whether those rights were clearly established at the time. The defendants argue[7] the plaintiffs have not alleged a violation of a clearly established right and present individual arguments with respect to the threat of violence and the various environmental conditions. Doc. #78 at 18–26. However, the Court must also look to whether the alleged circumstances together amount to an Eighth Amendment violation. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) ("Conditions … alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities."); *Alberti v. Klevenhagen*, 790 F.2d 1220, 1223 (5th Cir. 1986) ("In determining the constitutional question, we need not

---

[7] The defendants' argument is almost identical to that raised in their first motion to dismiss and still divides the plaintiffs' single § 1983 claim alleging violations of the Eighth Amendment into two separate claims based on a failure to protect and the conditions of their confinement. Doc. #78 at 18–26.

11

separately weigh each of the challenged institutional practices and conditions, for we instead look to the totality of the conditions.").

Together, the complained of conditions, to which all the plaintiffs as inmates at Parchman were exposed and all the defendants allegedly had knowledge, amount to a violation of clearly established constitutional rights. *See Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020) (corrections officers were not entitled to qualified immunity because "[c]onfronted with the particularly egregious facts of this case, any reasonable officer should have realized that [the plaintiff's] conditions of confinement offended the Constitution"); *Gates*, 376 F.3d at 338 (affirming injunctive relief because filthy cells, exposure to human waste, and inadequate lighting, among other conditions, amounted to an Eighth Amendment violation).

With respect to the defendants' argument that the plaintiffs have not alleged a particular injury, "[a] prisoner need not show serious current symptoms or an actual injury to state a valid Eighth Amendment claim; it is enough that the prison conditions pose an unreasonable risk of serious damage to his future health." *Johnson v. Epps*, 479 F. App'x 583, 590 (5th Cir. 2012) (cleaned up) (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993)); *Gates v. Collier*, 501 F.2d 1291, 1301 (5th Cir. 1974) ("The prohibition against cruel and unusual punishment contained in the Eighth Amendment … is not limited to specific acts directed at selected individuals, but is equally pertinent to general conditions of confinement that may prevail at a prison."). Because the plaintiffs have pled facts which, if proven, would amount to the violation of clearly established constitutional rights, the defendants are not entitled to qualified immunity at this stage.

## VI
## Prison Litigation Reform Act

Finally, the defendants argue the "claims for compensatory damages are barred by the physical injury requirement of the Prison Litigation Reform Act 42 U.S.C. § 1997e." Doc. #78 at

12

31. The plaintiffs respond that this argument is "incorrect and premature" because the plaintiffs "have alleged gross violations of their Eighth Amendment Rights, entitling them, at a minimum, to nominal damages and punitive damages." Doc. #80 at 22.

Under the Prison Litigation Reform Act, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Thus, a prisoner is prevented "from seeking compensatory damages [for emotional or mental injuries] for violations of federal law where no physical injury is alleged." *Mayfield v. Tex. Dept. of Criminal Justice*, 529 F.3d 599, 605. (5th Cir. 2008). However, "a prisoner can, absent a showing of physical injury, pursue punitive or nominal damages based upon a violation of his constitutional rights." *Id.* at 606.

Here, the plaintiffs fail to allege that they have suffered any physical injury because of the defendants' conduct. Thus, to the extent the plaintiffs seek compensatory damages based on emotional or mental injury, such claims are properly dismissed. However, they "may recover nominal or punitive damages, despite § 1997e(e), if [they] can successfully prove that [the defendants] violated [their constitutional] rights." *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007).

## VII
## Conclusion

The March 15 entry of default against Turner [74] is **SET ASIDE**. The defendants' motion to dismiss [77] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent it seeks dismissal of all claims against Perry, dismissal of the § 1985(3) claims, and dismissal of the claims for compensatory damages to the extent they are based on emotional or mental injury. The motion is DENIED in all other respects. The § 1985(3) claims against all the

13

defendants are **DISMISSED with prejudice**. The claims against Perry are **DISMISSED without prejudice.**

    **SO ORDERED**, this 2nd day of November, 2021.

                                                  **/s/Debra M. Brown**
                                                  **UNITED STATES DISTRICT JUDGE**