IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

ANDREW ALEXANDER, on behalf of himself
and all others similarly situated                                                PLAINTIFFS

V.                                             CIVIL ACTION NO. 4:20-CV-21-SA-JMV

PELICIA E. HALL et al.                                                        DEFENDANTS

ORDER AND MEMORANDUM OPINION

The Plaintiffs filed this putative class action lawsuit on February 10, 2020. After multiple amendments, they filed their Fifth Amended Complaint [75] on March 16, 2021. Thereafter, the Defendants filed a Motion to Dismiss [77], which, on November 2, 2021, the Court granted in part and denied in part. *See* [87]. Several months later, on March 4, 2022, the Defendants filed the present Motion [127], wherein they request, in addition to other relief, that the Court partially vacate its November 2, 2021 Order [87] and dismiss all claims. The Motion [127] has been fully briefed. The Court is prepared to rule.

*Brief Factual Background*

This civil action is a putative class action arising from the conditions at the Mississippi State Penitentiary, otherwise known as Parchman. The Plaintiffs were housed at Parchman as inmates between February 17, 2017 and the present.[1] There are numerous Defendants, and the Fifth Amended Complaint [75] provides the following description of each of them:

    (1)    Pelicia Hall (Commissioner of the Mississippi Department of Corrections ("MDOC") from March 2017 through December 2019);

    (2)    Tommy Taylor (Interim Commissioner of MDOC as of January 2020);

---

[1] There are fourteen named Plaintiffs in the Fifth Amended Complaint [75], but the lawsuit is also filed on behalf of "a class of prisoners currently confined or who will be confined at Parchman." [75] at p. 7-8.

(3) Marshal Turner (Superintendent of Parchman);

(4) Jaworski Mallett (Deputy Commissioner for Institutions at MDOC);

(5) Brenda Cox (Chief Security Officer and a Warden at Parchman);

(6) Timothy Morris (Warden of Area I at Parchman);

(7) Lee Simon (Deputy Warden of Area I at Parchman);

(8) Marylen Sturdivant (Associate Warden of Area I at Parchman);

(9) Wendell Banks (Warden of Area II at Parchman);

(10) Verlena Flagg (Deputy Warden of Area II at Parchman);

(11) Jewel Morris (Associate Warden of Area II at Parchman);

(12) Leather Williams (person in charge of the K9 unit at Parchman);

(13) Earnest King (Correctional Officer at Parchman);

(14) Laquitta Meeks (Correctional Officer at Parchman);

(15) Stanley Flagg (Correctional Officer at Parchman);

(16) Claude Lee (Correctional Officer at Parchman);

(17) Peggy Lathan (Correctional Officer at Parchman);

(18) Olivia Westmoreland (Correctional Officer at Parchman);

(19) Caren Webb (Correctional Officer at Parchman);

(20) Terry Haywood (Correctional Officer at Parchman); and

(21) Audrey Fields (Caseworker at Parchman).

[75] at p. 8-9.

In the Fifth Amended Complaint [75], the Plaintiffs allege that Parchman has for some time "been in an ongoing state of crisis" and is "so severely underfunded and staffed with persons such as Defendants herein, that inmates are routinely denied access to basic amenities such as clean water, plumbing, and electricity." [75] at p. 3. The Fifth Amended Complaint [75] further alleges that nine inmates have died at Parchman since January 1, 2020 and that:

> A slew of disturbing images and videos have surfaced showing that inmates are being required to defecate in plastic bags inside of their cells because their toilets are not functional.
>
> The underfunding and lack of Defendant's adherence to policies and/or customs that would have alleviated the complaints made herein, also forces people held in Mississippi's prison to live in squalor, endangering their physical and mental health. The prisons have failed to provide the basic necessities, such as a place to sleep. In Parchman, the units are subject to flooding. Black mold festers. Rats and mice infest the prison. Units lack running water and electricity for days at a time.

[75] at p. 3-4.

The Plaintiffs set forth allegations against each of the Defendants and essentially contend that each of them was aware of the unconstitutional conditions at Parchman for many years, yet failed to take reasonable measures to abate such conditions but, instead, contributed to and further perpetuated them. The Plaintiffs set forth substantive claims for: (1) cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments (pursuant to 42 U.S.C. § 1983); and (2) conspiracy to deprive Plaintiffs of equal protection of the law (pursuant to 42 U.S.C. § 1985).

In its previous Order [87], the Court substantially limited the Plaintiffs' ability to recover. Specifically, the Court held that the Plaintiffs had adequately alleged a violation of their Eighth Amendment rights; however, the Court also noted that the Prison Litigation Reform Act ("PLRA") barred the Plaintiffs from recovering compensatory damages for this claim (because they did not allege any physical injury). Therefore, to the extent the Plaintiffs sought compensatory damages

under that claim, the Court granted dismissal. *See* [87] at p. 13 ("Thus, to the extent the plaintiffs seek compensatory damages based on emotional or mental injury, such claims are properly dismissed."). In addition, the Court dismissed the Plaintiffs' conspiracy claim altogether because that claim was not based upon any allegation that the Defendants' conduct "was motivated by racial animus," and Section 1985 does not extend beyond that limited category. [87] at p. 9.

Thus, the Court's Order [87] narrowed the scope of this lawsuit to a potential Eighth Amendment violation—with recoverable damages limited to those of a nominal and punitive nature. In reaching this conclusion, the Court held that the Defendants were *not* entitled to qualified immunity on the Eighth Amendment claim.

As noted above, the above-referenced Order [87] was entered on November 2, 2021. And, as part of that Order [87], the Court set aside the entry of default against Marshal Turner. The Plaintiffs effectuated service of process on Turner on February 11, 2022. *See* [126]. On March 4, 2022, the Defendants filed the present Joint Motion [127], wherein they request that the Court partially vacate its previous Order [87]. The Defendants contend that "Plaintiffs' Complaint should be dismissed in full against Defendant Marshal Turner and all Defendants[.]" [128] at p. 1.

*Analysis and Discussion*

In considering the present Motion [127], the Court notes the context in which it was filed. Aside from the issue with the entry of default against Turner, the present Motion [127] essentially requests the same relief that the Defendants sought in their original Motion to Dismiss [77], which the Court addressed in its previous Order [87]. The Defendants specifically contend that the Court erred in its analysis, alleging "[r]espectfully, the Court's analysis diverted from the required examination into whether the Plaintiffs sufficiently pleaded that a particular individual Defendant knew of a particular and substantial risk of bodily harm to a particular Plaintiff but ignored that

4

risk and harmed the Plaintiff." [128] at p. 2-3. Notably, the Defendants did not file a motion to reconsider nor did they file an interlocutory appeal of the Court's denial of qualified immunity—two avenues which they could have pursued. Instead, after Turner was served with process, the Defendants filed the present Motion [127], essentially raising the same arguments.

In arguing that the Court's prior analysis was flawed, the Defendants heavily rely upon the Fifth Circuit's August 5, 2021 decision in *Dockery v. Cain*, 7 F.4th 375 (5th Cir. 2021). In *Dockery*, the plaintiffs, prisoners at East Mississippi Correctional Facility ("EMCF"), filed a class action challenging the conditions of confinement at EMCF. *Id*. at 377. The plaintiffs challenged the EMCF conditions in seven different categories: "mental health care, medical care, solitary confinement, excessive force, protection from violence, sanitation, and nutrition and food safety." *Id*. That litigation extended over a period of five years and ultimately culminated in a five-week bench trial, during which the district judge personally toured EMCF. *Id*. Ultimately, the district court issued an order dismissing the plaintiff's claims. *Id*. The Fifth Circuit characterized the district court's holding as follows:

> The court subsequently issued a fifty-five-page order finding no constitutional violations and denying Plaintiffs all relief. In particular, the court noted that conditions at EMCF had changed dramatically since the lawsuit's beginning. While the court did not "speculate" what the outcome might have been had "the conditions that existed at the prison when the lawsuit was filed continued to exist at the time of trial or thereafter," it found the current conditions constitutional. . . The court further noted specific changes made at EMCF during the litigation. . . These changes helped satisfy the court that Plaintiffs had not shown any basis for an injunction.

*Id*. at 377-78.

On appeal, the plaintiffs argued that the district court erred by considering all of the conditions in isolation, as opposed to in combination. *Id*. at 378. The Fifth Circuit rejected this argument, noting that "[t]o the extent [the plaintiffs] argue that all conditions at EMCF should

5

have been evaluated together, that argument is foreclosed by *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). As that decision explained, 'nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.'" *Id*. (citations omitted).

In the case *sub judice*, the Defendants contend that the Court's prior Order [87] ran afoul of *Dockery* because "the Court lumped all of the Plaintiffs together, lumped all of the Defendants together, and lumped all of the alleged unconstitutional prison conditions together to find that Plaintiffs 'stated a claim for an Eighth Amendment violation based upon the conditions of their confinement.'" [128] at p. 2 (citing [87] at p. 7-8). In essence, the Defendants argue that the Court improperly failed to segregate each of the Plaintiffs' claims and analyze them separately and that, had the Court done so, it would have yielded a result of dismissal.[2]

The Court disagrees. Although the allegations of the Plaintiffs' Fifth Amended Complaint [75] cover a significant variety of purported conditions, the claims are not simply allegations of amorphous unconstitutional overall conditions, which the Fifth Circuit emphasized as improper in its *Dockery* opinion. Instead, a review of the Fifth Amended Complaint [75] reveals that the Plaintiffs allege multiple *specific* categories of Eighth Amendment violations. For example, the Plaintiffs allege, in part:

> 67. Consequently, since January 1, 2020, at least nine inmates have died at Parchman, and at least two other inmates have escaped from Parchman.
>
> 68. The neglected state of prison facilities fosters an environment for squalor [and] violence.
>
> 69. In some instances, prisoners are confined in premises[] that have been legally condemned as unsafe for human habitation without regard for the condemnation orders.

---

[2] The Court notes that the Order [87] at issue was signed by United States District Judge Debra Brown, prior to her recusal on December 28, 2021. *See* [107].

70. Where toilets are not functioning, inmates are forced to void in sinks [which] they must then use for sanitation, or in plastic bags provided by staff.

71. Rats and cockroaches crawl over inmates while they sleep and attack their food.

72. Toilets overflow with sewage which spills out and remains on the floors.

73. Potable water from available sources is contaminated with human waste and brown in color.

74. Rain leaks from the roof streaming through multiple cells and causing black mold to grow on walls and surfaces where inmates sleep.

75. At times there are no meals, and sometimes only one per day.

76. When served, the "food" is cold, rotten and often containing rocks, insects, bird droppings and rat feces.

77. Guards, many of whom are gang related themselves, allow inmates access to cell keys and access to main controls thusly facilitating gang attacks against prisoners who are in rival gangs, or not in gangs at all.

78. Staff are involved in the smuggling of contraband into the facility, which is then used as bait and rewards in gang activities which increases the violence within the facility as a whole.

[75] at p. 18-19.

The Fifth Amended Complaint [75] alleges that all of the Plaintiffs have been subjected to these conditions, which they contend "in and of themselves and taken as a whole" violate the Eighth Amendment. [75] at p. 20. The Court finds these allegations to go above and beyond something "so amorphous as 'overall conditions.'" *Dockery*, 7 F.4th at 378. The Court finds these contentions to be more than sufficient to state a claim upon which relief can be granted. Particularly, if proven, the Plaintiffs' allegations, considered individually or as a whole, may very

well establish the deprivation of basic individual human needs. *Id*. ("It is true that courts must consider conditions together if they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.") (citation and quotation marks omitted). Specifically, the Plaintiffs' allegations plausibility state a claim for deprivation of sanitary food and functioning sanitation. The Defendants expend considerable energy pointing to specific cases wherein contentions of the nature alleged in the Fifth Amended Complaint [75], such as the presence of mold or dirty conditions, in isolation cannot alone establish constitutional deprivations. *See* [128] at p. 19-23. However, considering all of the Plaintiffs' allegations as a whole, the Court rejects the Defendants' contention that, if all allegations in the Fifth Amended Complaint [75] are taken as true, there was no constitutional violation.[3]

The Defendants also (correctly) note that, "in order to establish a valid Eighth Amendment violation for purposes of a claim under 42 U.S.C. § 1983, each of the Plaintiffs must separately show that '(1) each defendant knew of a substantial risk of serious bodily harm to the plaintiff and (2) disregarded the risk.'" [128] at p. 2. (citing [87] at p. 7). The Defendants contend that although the Court's previous Order [87] outlined this applicable standard, the Court failed to actually apply that standard.

The Court disagrees. The Fifth Amended Complaint [75] sets forth specific allegations as to each Defendant. For example, as to Turner, the Plaintiffs allege:

> 87. Defendant MARSHAL TURNER is Superintendent of the Mississippi State Penitentiary. Defendant Turner manages and is responsible for the operations of Parchman. Defendant Turner is aware of the problems at Parchman as described in this cause of action, and has failed to take reasonable measures to abate the

---

[3] In reaching this conclusion, the Court notes the stark differences between *Dockery* and the case *sub judice*. In *Dockery*, the plaintiffs appealed the denial of an injunction, even though the defendants had already corrected the issues associated with the facility. There have been no filings on the docket in this case to indicate that the alleged unconstitutional conditions have been resolved, and this case is in a completely different procedural posture.

> substantial risks of serious harm set forth herein. Individuals at Parchman have sent numerous complaints to Defendant Turner, have numerous complaints about Defendant Turner's actions and non-actions personally, and Defendant Turner has personally inspected Parchman on multiple occasions. Under his leadership and his knowledge, he and all named Defendants have engaged in the activities and deprivations described in this cause of action. Additionally, Defendant Turner has personally knowingly and willfully hired and continued to employ persons who are affiliated with gangs, and at a minimum, tacitly acquiesces in the continued gang activity as described herein.

[75] at p. 22.

The Fifth Amended Complaint [75] sets forth very similar allegations as to each Defendant, which the Defendants characterize as a failure to specify how *each* Defendant specifically caused the damages *each* of the Plaintiffs have allegedly suffered. The Court rejects this argument. Rather, the Court, as the Plaintiffs contend, finds that the Plaintiffs' allegations illustrate their contention that each of the Defendants engaged in virtually the same conduct—leading to the alleged constitutional violations. Of course, this litigation is only at the motion to dismiss stage. The Court's ruling is limited to the sufficiency of the allegations—and in no way addresses whether the Plaintiffs will ultimately be able to prove those claims. Undoubtedly, the Plaintiffs, through discovery, will have to develop proof that *each* Defendant engaged in the alleged conduct depriving *each* of the Plaintiffs of their constitutional rights. And if the Plaintiffs fail to do so as to any particular Defendant, that Defendant will certainly be entitled to dismissal.

But for purposes of the present stage of the litigation, the Court finds that the allegations are sufficient to survive Rule 12(b)(6) dismissal. Stated simply, this is not a situation wherein the Plaintiffs include no details whatsoever and simply allege that the "overall conditions" are unconstitutional. The Fifth Amended Complaint [75] includes *specific* allegations—quoted above—as to how the conditions fall below the Eighth Amendment threshold. This is sufficient.

As to all other contentions, the Court adopts the reasoning set forth in its previous Orders [70, 87].[4]

The scope of this lawsuit is very limited. The Plaintiffs' only viable claims at this stage are for potential nominal and punitive damages based upon alleged Eighth Amendment violations. In its ruling today, the Court simply concludes that the Plaintiffs have stated plausible claims to survive Rule 12(b)(6) dismissal.

*Conclusion*

The Motion [127] is GRANTED IN PART and DENIED IN PART. To the extent the Defendants seek dismissal of the Plaintiffs' claims against Marshal Turner, the Court finds that the claims should be dismissed to the same extent its previous Order [87] dismissed the claims against the other Defendants, but no further. All other relief is DENIED. The previously-imposed stay is hereby LIFTED. The Magistrate Judge will hold a status conference in this case in due course.

SO ORDERED, this the 22nd day of March, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[4] The Court sees no need to repeat the analysis set forth in its previous Orders [70, 87] as to standing, the limitations of damages under the PLRA, the failure to state a claim under 42 U.S.C. § 1985, *etc*. Those determinations are adopted in full.