IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**ANDREW ALEXANDER, et al.**                                             **PLAINTIFFS**

**VS.**                                             **CIVIL ACTION NO. 4:20-CV-21-SA-JMV**

**PELICIA E. HALL, et al.**                                                 **DEFENDANTS**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
RULE 702 AND *DAUBERT* MOTION TO EXCLUDE THE EXPERT
TESTIMONY AND REPORT OF JONATHAN S. SHEFFTZ**

Defendants Pelicia Hall, Tommy Taylor, Jeworski Mallett, Brenda Cox, Timothy Morris, Lee Simon, Marylen Sturdivant, Wendell Banks, Verlena Flagg, Jewel Morris, Leather Williams, Earnest King, Laquitta Meeks, Stanley Flagg, Claude Lee, Peggy Lathan, Olivia Westmoreland, Caren Webb, Terry Haywood, Audrey Fields, and Marshal Turner ("Defendants") submit this memorandum in support of their motion to exclude the testimony, report, and supplemental report of Plaintiffs' damages expert Jonathan S. Shefftz.

Shefftz's opinions should be excluded under *Daubert* for multiple, independent reasons. Most striking, Shefftz's opinions are irrelevant to class certification and inadmissible because they relate solely to compensatory damages, and this Court has ruled twice that Plaintiffs *cannot* recover compensatory damages. [Doc. 146] at 10. *The Court's analysis should end there*. The Court should not consider any expert damages opinions that relate solely to damages that the Court has already ruled Plaintiffs cannot recover.

Moreover, Shefftz's opinions are irrelevant for additional reasons discussed below, and his opinions are patently unreliable. At bottom, Shefftz's opinions are irrelevant to, and do not support, the proposition that this case should be tried as a class action. On the contrary, Shefftz's opinions demonstrate quite the opposite: This case is *not* a proper class action.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

I. **Plaintiffs' claims as limited by this Court.**

In this putative class action, 14 Plaintiffs, all incarcerated or formerly incarcerated at the Mississippi State Penitentiary ("MSP"), seek money damage awards on behalf of themselves and several thousand potential class members from 21 current or former employees of the Mississippi Department of Corrections ("MDOC"), all of whom are named as defendants in their individual capacities. *See Fifth Am. Compl*. [Doc. 75] at 2, ¶ 1. Plaintiffs' complaint asserts they are entitled to "compensatory and punitive damages" from these 21 individual-capacity Defendants because Defendants allegedly subjected Plaintiffs to a substantial risk of serious harm from violence and unconstitutional prison conditions of many different varieties. *Id*. at ¶¶ 60-112, and p.43.

Importantly, however, this Court's prior orders substantially limited Plaintiffs' claims. *See* [Doc. 146] at 10. Although Plaintiffs' complaint seeks "compensatory and punitive damages," [Doc. 75] at p.43, their compensatory damage claims were dismissed, [Docs 87 and 146]. This Court has twice dismissed Plaintiffs' compensatory damages claims under the Prison Litigation Reform Act ("PLRA") because Plaintiffs' complaint failed to "allege that they have suffered any physical injury." [Doc. 87] at 13. "The Court's Order [87] narrowed the scope of this lawsuit to a potential Eighth Amendment violation—with recoverable damages limited to those of a nominal and punitive nature," and this Court reaffirmed "the limitations of damages under the PLRA" in a subsequent order. [Doc. 146] at 3-4, 10 n.4. In the Court's words: "The scope of this lawsuit is very limited. The Plaintiffs' only viable claims at this stage are for potential nominal and punitive damages based upon alleged Eighth Amendment violations." [Doc. 146] at 10.

Also relevant here is that the Court defined the standard of proof Plaintiffs must meet to recover those "potential nominal and punitive damages":

> Undoubtedly, the Plaintiffs, through discovery, will have to develop proof that *each* Defendant engaged in the alleged conduct depriving *each* of the Plaintiffs of their constitutional rights. And if the Plaintiffs fail to do so as to any particular Defendant, that Defendant will certainly be entitled to dismissal.

[Doc. 146] at 9 (emphasis in original).

## II. **Shefftz's class-action certification opinions and reports.**

On August 24, 2023, Plaintiffs disclosed Shefftz and his report under the Court's class-action scheduling order to, according to Shefftz, "provide an expert opinion regarding the measurement of money damages suffered by Plaintiffs." *See* Ex. 1, Shefftz Report at 1. On December 12, 2023, despite having no leave of Court to do so, Plaintiffs produced Shefftz's "supplemental and rebuttal" report, but the scope is the same. *See* Ex. 2, Shefftz Supplemental Report. In both reports, Shefftz clarifies that he is "opining *solely* on the measurement of money damages suffered by Plaintiffs." Ex. 1 at 2; Ex. 2 at 2 (emphasis added).

Shefftz, however, opines "*solely* on the measurement of [*compensatory*] damages," *i.e.*, "damages such as will compensate the injured party for the injury sustained." *Wesson v. United States*, 48 F.3d 894, 898 (5th Cir. 1995) (quotation omitted). Shefftz's report contains four opinions, one on "pecuniary [compensatory] damages" and three on "non-pecuniary [compensatory] damages." By "pecuniary" damages, Shefftz means the amount of "money damages" allegedly needed to compensate Plaintiffs for "inability to gain employment upon release" because of their "specific injuries – or even death." Ex. 2 at 1. By "non-pecuniary," Shefftz means the amount of money damages to compensate Plaintiffs for "being subjected to cramped and generally uncomfortable conditions." *Id.* at 15.

In his "pecuniary" damages opinion, Shefftz contends that the Court can calculate how much future lost wages each inmate in the class will incur as a result of "inmate-specific injuries – or even death" based on four (or six) "Plaintiff-specific attributes." Ex. 1 at 1 (original report

3

attributes were "gender, death versus injury, date of birth, and anticipated release date"); Ex. 2 at 1-2 (supplemental report containing alternative opinion with additional attributes of "labor force status at the time of conviction, educational attainment and projected hourly wage rate").[1]

For "non-pecuniary damages," Shefftz attempts to calculate the amount of money damages allegedly needed to compensate the inmates in the class for "being subjected to cramped and generally uncomfortable conditions." Ex. 2 at 15. His first opinion is that there is *not* a "reliable" method of calculating these non-pecuniary money damages using traditional methodologies. *Id.* at 15–17. Therefore, Shefftz opines that the Court should "extrapolate" the non-economic damages from four "awards from U.S. courts" and "awards by the European Convention on Human Rights," find the median of those "awards," and then multiply the median "awards" by the number of inmates at MSP. *Id.* at 17–21. As discussed below, his suggested guess work is not the kind of expert testimony that is admissible under *Daubert*.

## STANDARD OF REVIEW

Under the familiar *Daubert* standard, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. Federal Rule of Evidence 702 codifies *Daubert*, and specifies that a district court must, as part of its gatekeeping role, determine whether testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," "is based on sufficient facts or data," and "is the product of reliable principles and methods," and whether "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. This extends to "testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526

---

[1] Shefftz's supplemental report states that he removed the attribute of gender from his analysis "given the all-male characteristics of Plaintiffs." Ex. 2 at 6. In other words, Shefftz learned after he submitted his report that MSP is an all-male prison. *Id.*

4

U.S. 137, 141 (1999).

The same requirements apply to expert testimony whether offered at the class certification stage or trial. *See Prantil v. Arkema Inc.*, 986 F.3d 570, 575 (5th Cir. 2021) ("[T]he *Daubert* hurdle must be cleared when scientific evidence is relevant to the decision to certify"). "Expert testimony that is insufficiently reliable to satisfy the *Daubert* standard cannot 'prove' that the Rule 23(a) prerequisites have been met 'in fact,' nor can it establish 'through evidentiary proof' that Rule 23(b) is satisfied." *Id*. The class certification inquiry "must be made based on adequate admissible evidence to justify class certification." *Unger v. Amedisys Inc.*, 401 F.3d 316, 319 (5th Cir. 2005). "Thus, if an expert's opinion would not be admissible at trial, it should not pave the way for certifying a proposed class." *Prantil*, 986 F.3d at 576. Plaintiffs have the burden of establishing the admissibility of their expert's opinions by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.

## ARGUMENTS AND AUTHORITIES

**I. Shefftz's opinions are irrelevant because they concern damages that Plaintiffs cannot recover.**

Because this Court ruled that Plaintiffs' *cannot* recover compensatory damages, Shefftz' opinions—which concern only compensatory damages—are wholly irrelevant to class certification and should be excluded.

Shefftz's damages opinions must be relevant to class certification to survive *Daubert*, *see Prantil*, 986 F.3d at 575, and Shefftz's damages opinions are relevant to class certification only if they would assist the Court in "establishing that damages are capable of measurement on a classwide basis." *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 258 (5th Cir. 2020) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). Certification of a damages class action is improper where, among other things, "the calculation of damages is not susceptible to a

5

mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is clearly inadequate." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003*)*. Shefftz's damages opinions are *irrelevant* because he does not opine on any damages that Plaintiffs may recover.

It is self-evident that an expert's opinion on damages that a plaintiff cannot recover cannot survive *Daubert*, but to be sure, Mississippi's federal courts have held the same. *See, e.g.*, *Blackard v. Hercules, Inc.*, 17 F. Supp. 3d 576 (S.D. Miss. 2014). In *Blackard*, a contamination case, the plaintiff designated two expert witnesses to testify regarding plaintiffs' mental and emotional distress damages. *Id.* at 579-80. As here, the defendants filed a *Daubert* motion arguing that the experts' opinions were "irrelevant and thus inadmissible" because for multiple reasons "Plaintiffs cannot recover damages for mental anguish and/or fear." *Id.* at 579. The Court recited the applicable *Daubert* relevancy standard, analyzed the applicable substantive law, and ruled that, under Mississippi law, the plaintiffs had no cognizable claim for mental or emotional distress damages. *Id.* at 583. With no valid claim for mental or emotional distress damages, the *Daubert* analysis was straightforward: "[The experts' damages] opinions cannot be 'properly applied to the facts in issue' in this cause given the absence of any cognizable claim for mental or emotional distress. Thus the opinions are irrelevant and will be excluded from the record in this action." *Id.*

The result from *Blackard* is called for here. The only difference between *Blackard* and this case is that, unlike *Blackard*, this Court need not analyze the applicable law to determine whether Plaintiffs have a "cognizable claim" for compensatory damages. *That is because this Court has already dismissed Plaintiffs' claims for compensatory damages. See* [Docs. 87 and 146]. This Court has already analyzed the applicable law, which provides that the PLRA "prevents prisoners from seeking compensatory damages for violations of federal law where no

6

physical injury is alleged." See *Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 605 (5th Cir. 2008). The Court has already analyzed the Plaintiffs' complaint and found that "[h]ere, the plaintiffs fail to allege that they have suffered any physical injury because of the defendants' conduct." [Doc. 87] at 13. The Court has already ruled that the PLRA "barred the Plaintiffs from recovering compensatory damages." [Doc. 146] at 3. This Court's orders are clear: "*The scope of this lawsuit is very limited. The Plaintiffs' only viable claims at this stage are for potential nominal and punitive damages based upon alleged Eighth Amendment violations.*" *Id.* at 10 (emphasis added).

It is equally clear that Shefftz's opinions are irrelevant and must be excluded because they pertain only to Plaintiffs' and the putative class's recovery of *compensatory* damages. "Compensatory damages" means "damages such as will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury." *Wesson*, 48 F.3d at 898 (quoting *Reese v. United States*, 24 F.3d 228, 231 (Fed. Cir. 1994) and *Compensatory Damages*, BLACK'S LAW DICTIONARY (6th ed. 1990)). Shefftz uses the uncommon terms "pecuniary" and "non-pecuniary" damages, which means "[c]ompensatory damages … divided into economic and non-economic components." *See* Mississippi Law of Damages § 2:10.

Shefftz's opinion on "pecuniary" damages concerns only economic (future lost wages) compensatory damages that the Plaintiffs cannot recover. By "pecuniary," Shefftz means damages to compensate Plaintiffs and the inmate class from "the inability to gain employment" as a result of "inmate-specific injuries – or even death." Ex. 2 at 1. Such an "impaired earning capacity" or "lost future earnings" claim is a claim for compensatory damages, which is barred here. *See, e.g., Associated Terminals of St. Bernard, LLC v. Potential Shipping HK Co., Ltd.*, 324 F. Supp. 3d 808, 824 (E.D. La. 2018) ("An award for impaired earning capacity is intended to

7

compensate the [plaintiff] for the diminution in that stream of income. The paramount concern of a court awarding damages for lost future earnings is to provide the victim with a sum of money that will, in fact, replace the money that he would have earned."). Plaintiffs and any class cannot recover these "pecuniary damages" claims because the Court dismissed them, among other reasons.[2]

Shefftz's three opinions on "non-pecuniary damages" concern only non-economic compensatory damages for mental or emotional injury, including pain and suffering. *See* Ex. 2 at 15-21; *see Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116, 123 (1998); Mississippi Law of Damages § 2:10 ("Compensatory damages can also be divided into economic and non-economic components…. 'Noneconomic damages' means subjective, *nonpecuniary damages*"). Shefftz's reports make clear that he is opining on compensatory damages for mental or emotional injury; calling the damages "nonpecuniary" does not remove them from being compensatory damages. *See* Ex. 2 at 15-21. He states these damages are to compensate Plaintiffs for "being subjected to cramped and generally uncomfortable conditions." Ex. 2 at 15. They are "money damages" for "transient *discomfort*." *Id.* Such claims of "discomfort," in the absence of an allegation of physical injury, are exactly what the PLRA prohibits and this Court has already dismissed. *See, e.g.*, *Curry v. Byrd*, 2016 WL 1068858, at *3 (S.D. Miss. Jan. 28, 2016) (dismissing claim that a plaintiff "suffered discomfort" under the PLRA).

As in *Blackard*, the analysis is straightforward. Shefftz's opinions relate only to compensatory damages, and Plaintiffs cannot recover compensatory damages, either individually

---

[2] The Court's orders dismissing compensatory damages aside, Plaintiffs also cannot recover "lost future earnings" because, among other things, (1) Plaintiffs were "required to specifically plead [any] claims for lost wages and loss of wage-earning capacity" in the complaint but did not, *McCon v. Perez*, 2018 WL 4001971, at *3 (S.D. Miss. July 24, 2028); (2) Shefftz's lost wage calculations are based upon "injuries – or even death," and Plaintiffs failed to "allege that they have suffered any physical injury" in their complaint, [Doc. 87] at 13; and (3) there is absolutely no proof that any Plaintiff or other inmate has lost wages or earning capacity because of any of the Defendants' conduct or otherwise.

8

or as a class. *See* [Docs. 87 and 146]. Shefftz's damages "opinions cannot be 'properly applied to the facts in issue' in this cause given the absence of any cognizable claim for [compensatory damages]. Thus the opinions are irrelevant and [should] be excluded from the record in this action." *Blackard*, 17 F. Supp. 3d at 583. **The Analysis Should End Here**. Expert opinions attempting to calculate damages that cannot be recovered should be excluded.

## II. Shefftz's opinions are irrelevant and unhelpful to the class certification analysis and should therefore be excluded for other reasons.

Shefftz's expert opinions on damages that the Court already ruled cannot be recovered by Plaintiffs should be excluded, and the Court need not consider anything else. However, there are other reasons why Shefftz's opinions are irrelevant to the Court's *Daubert* analysis and should be excluded, and Defendants state a few below.

Rule 23 and Supreme Court precedent "demands [a] fit between plaintiffs' class-wide liability theory and plaintiffs' class-wide damages theory." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 410-11 (5th Cir. 2017). Shefftz's opinions do not "fit" for multiple reasons.

First, Shefftz ignores the relevant standard articulated by the Court:

> Undoubtedly, the Plaintiffs, through discovery, will have to develop proof that ***each*** Defendant engaged in the alleged conduct depriving ***each*** of the Plaintiffs of their constitutional rights. And if the Plaintiffs fail to do so as to any particular Defendant, that Defendant will certainly be entitled to dismissal.

[Doc. 146] at 9 (emphasis in original). Shefftz's analysis does not account for the fact that Plaintiffs and the proposed class seek money damages from 21 separate Defendants in their individual capacities. *See* Ex. 3, Cross Report at 8. Not one of Shefftz's opinions offers a method for identifying, apportioning, or determining damages owed by specific Defendants.

Lack of "fit" is also evident because Shefftz's pecuniary damages methodology, which seemingly does not even purport to apply to the whole class, concerns "inmate-specific injuries or death," but Plaintiffs have not alleged they have suffered any physical injury or death.

9

[Doc. 87] at 13. These Plaintiffs have no authority to litigate wrongful death claims on behalf of inmates' families. *See* Miss. Code Ann. § 11-7-13. Shefftz ties these injuries and deaths (for which Plaintiffs and the class cannot recover) to lost earning capacity damages that were not alleged much less supported. *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (if expert opinion is "fundamentally unsupported, then it offers no expert assistance"). Plaintiffs allege no lost earning capacity in their complaint (which is fatal to the claim, *McCon*, 2018 WL 4001971, at *3), and there is no proof that any Plaintiff or inmate at MSP has lost any earning capacity because of any particular Defendant's actions or otherwise.

Shefftz's non-pecuniary (but still compensatory) opinions fare no better and will simply not help the Court in its class certification analysis. For non-pecuniary damages, Shefftz merely takes damages "awards" from two dissimilar cases, one of which was a slip-and-fall, and asks the Court to multiply those "awards" by an (incorrect) number of inmates at MSP. Ex. 2 at 17–21. Shefftz also improperly assumes Plaintiffs and the putative class are similarly situated and suffered the same damages. *Id.* at 1-2. Inmates in Unit 29 were in twelve separate buildings (each with two zones), inmates in Unit 32 were in at least three zones, and thousands of inmates from Unit 29 were never in Unit 32, and all of these inmates were in those areas for different periods of time. And many of the Defendants never even worked in areas where Plaintiffs lived.

These opinions from Shefftz do not advance the ball for Plaintiffs on class certification; instead, the opinions show that class certification should be denied.

**III.    Shefftz's opinions are otherwise unreliable and should be excluded.**

Again, the Court need not reach the reliability prong of the *Daubert* analysis in order to exclude Shefftz's opinions, but Shefftz's opinions are also unreliable. Defendants explain below a few of the numerous inaccuracies, noncredible assumptions, and biased calculations that render Shefftz's opinions unreliable under *Daubert*, many of which are explained in greater detail in

Philip J. Cross's expert report, which is incorporated by reference. *See* Ex. 3.

To be "reliable" and admissible, an expert's testimony must be "grounded in the methods and procedures of science" and more than "unsupported speculation or subjective belief." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999). "The district court's responsibility is 'to make certain that an expert …employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (quoting *Kumho Tire*, 526 U.S. at 152). Shefftz's methodologies do not survive these standards.

### A. Pecuniary (Lost Wages) Damages.

Shefftz's pecuniary damages opinion states:

> For inmate-specific injuries – or even death – that can reasonably be expected to result in pecuniary damages via the inability to gain employment upon release, the money damages can be calculated accurately on an individual basis based on only four Plaintiff-specific attributes, i.e., gender, death versus injury, date of birth, and anticipated release date.

*See* Ex. 1, at 1.[3] Shefftz says the total pecuniary loss for the class would require consideration of <u>only</u> each inmate's "death versus injury, date of birth, and anticipated release date," and then it "would be a simple matter of copying the calculation cells down across all the rows for the inmates." *Id*. at 6.

<u>Lack of Intellectual Rigor and Non-Satisfaction of Factors</u>. At the outset, the lack of "intellectual rigor" in Shefftz's methodology is patent. *Pipitone*, 288 F.3d at 244. The proposition that the Court could assign a set monetary amount of lost wages sustained by each inmate at MSP (because of the actions of these Defendants or otherwise) based solely on those inmates' "death versus injury, date of birth, and anticipated release date" is illogical on its face.

---

[3] His supplemental report removed "gender" and added alternative attributes of "time of conviction, educational attainment, and projected hourly wage rate." Ex. 2 at 1-2.

11

Research has revealed no case where a federal court sanctioned any similar lost-wages analysis in any Section 1983 case. Plaintiffs also cannot show that this opinion satisfies any of the *Daubert* factors of testability, peer review, known or potential error rate, or acceptance in the scientific community. *See Daubert*, 509 U.S. at 592-94.

Shefftz's opinion is also replete with flaws, including but not limited to:

Injury = Lost Earning Capacity. Shefftz's opinion hinges on the proposition that any (unknown) inmate injury "can reasonably be expected" to result in "the inability to gain employment." Ex. 2 at 1-2. That proposition is unsupported. Plaintiffs do not allege any injuries or lost wages. There is no proof that any Plaintiff or any inmate has lost earning capacity because of any injury at MSP, because of these Defendants or otherwise. Critically, there is also no proof, or even an allegation, that links inmate injuries to inability to work upon release in this case or otherwise.

Extent of Injury. But even if there were allegations or proof of any injuries and future lost wages from those injuries, Shefftz's proposed damages formula disregards the *extent* of the inmate injury. He says that this Court can assign the same future lost wages value to any inmate that suffers any injury or death based on date of birth and expected release date. That one-size-fits-all analysis lacks the requisite "intellectual rigor" under *Daubert*, it does not comport with this Court's rulings as stated above, and (assuming for the sake of argument that there were any injuries and Plaintiffs could recover for any injuries) such an analysis would award the same amount of lost wages to an inmate that lost an arm (if any) and an inmate that stubbed his toe (if any). His opinion is unconscionable.

Expected release dates. Shefftz says the Court can calculate lost wages based on date of birth and expected release date, but he fails to consider that no one knows the inmates' actual release date and the inmates with life sentences have no release date. *See* Ex. 3 at ¶ 19.

Workforce data. Shefftz uses "Skoog" data gathered from men in the labor force, but that data cannot be applied reliably to the MSP inmates for multiple reasons. None of these inmates are in the labor force; they are in prison. And as shown by the Department of Justice ("DOJ") data upon which Shefftz relies, fewer than 15 percent of inmates were even in the labor force before being sent to prison. *Id.* at ¶¶20-25.

Post-release employment rate. Shefftz's opinion that the Court can assign a constant post-incarceration employment rate of 35.1 percent is flawed and rebuffed by the DOJ data he relies upon. That DOJ data demonstrates that after an initial spike in employment after release, employment rates drop. *Id.* at ¶¶26-28.

Ignoring factors. The DOJ data upon which Shefftz relies considers factors such as race, time served, offence type, and recidivism rates, and Shefftz's one-size-fits-all analysis ignores those factors. *Id.*

Full-time work. Shefftz's calculus assumes released inmates would work full-time year round, but data show only 57.4% of low-wage workers do the same, and that 57.4% does not account for the fact that these inmates have committed felonies. *Id.* at ¶29.

Self-consumption rate. Shefftz says that any inmate's lost wages resulting from an injury would be reduced by 78.53% based on what that inmate would have spent (*i.e.*, consumption rate), but Shefftz failed to consider that lower income individuals have much higher consumption rates. *Id.* at ¶¶30-31.

Defendants could go on. *See generally Id.* at ¶¶1-47.

### B. **Non-Pecuniary (Non-Economic) Damages**.

Shefftz offers three opinions regarding non-pecuniary damages, but the first is just that there is not a "reliable" way to measure non-pecuniary damages with accepted methodology. His two other opinions are that the Court can calculate non-pecuniary damages by creating two

13

"median values" derived from four "awards" from other "incarceration cases" and the European Convention on Human Rights and simply multiply those median values by the number of inmates at MSP. This is clearly not "grounded in the methods and procedures of science" as required.

In general, Shefftz's non-economic damages opinions fail the intellectual rigor test on multiple levels. Research revealed no precedent in this Circuit sanctioning Shefftz's multiplier analysis in a prison case or otherwise. Using one single amount of non-economic damages for all MSP inmates is illogical in this case given the different conditions the inmates allegedly experienced for different periods of time (not to mention causative factors or the various individual Defendants who may have allegedly caused the damages). Shefftz offers no method for determining damages owed by specific Defendants, *see* [Doc. 146] at 9, and he does not even use the right number of inmates, Ex. 2 at 20; Ex. 3 at ¶11.

But, in addition, Shefftz's methodology for creating his "median value" is nonsensical. He derived his median value of $7,856 per inmate from four so-called "awards" from U.S. Courts. Ex. 2 at 19. Only two of those four cases involved actual "awards," and those "awards" are completely inapposite. *See* Ex. 4, Shefftz's "Award" Cases.

- *Everhart* was a settlement, not an "award", *id.* at 1;

- *Townsend* was a remittitur of punitive damages, not an "award", *id.* at 3-5;

- *Roberts* was a $7,500 award by an Ohio Court of Claims magistrate in a slip and fall case to which the defendants did not object, *id.* at 6-10; and

- *DeAngelo* was a $1,500 award against the State of New York (not defendant officials in their individual capacity) for pain and suffering caused by a rat bite, at 12-13.

Shefftz's alternative opinion that the Court should simply multiply the number of inmates by the median of awards recorded from a study on the European Convention on Human Rights is equally, if not more, unreliable. Ex. 2 at 20-21 (citing Ex. 5, *Measuring Violations of Human*

14

*Rights: An Empirical Analysis of Awards in Respect of Non-Pecuniary Damage under the European Convention on Human Rights*). That study concludes that non-economic damages awards in that *European* tribunal are inconsistent and unpredictable *unless* certain key factors such as seriousness of the violation, the applicant's (plaintiff's) status, and "overall context in which the breach occurred" are taken into account. Ex. 5 at 18-20. Shefftz takes none of these factors (or any other factor) into account. With zero analysis, Shefftz opines that the Court should simply adopt wholesale for each inmate, regardless of the inmates' circumstances, the median award from this *European* Convention, which adjudicates claims that range from "execution" to "torture." Ex. 5 at 45. The Court should exclude this absurd, "because-I-said-so" opinion. *Curtis*, 174 F.3d at 668.

## CONCLUSION

Shefftz's opinions for calculating class-wide damages must be excluded and ignored because they pertain to damages that Plaintiffs cannot even recover, are irrelevant to the class certification issue before the Court for other reasons, and are unreliable and severely flawed. These opinions demonstrate that Plaintiffs cannot try this case as a class action in any remotely logical way and that, in addition to excluding Shefftz's opinion and reports, class certification should be denied.

Dated: December 26, 2023.

Respectfully submitted,

**MARSHAL TURNER, PELICIA HALL, TOMMY TAYLOR, JEWORSKI MALLETT, BRENDA COX, TIMOTHY MORRIS, LEE SIMON, MARYLEN STURDIVANT, WENDELL BANKS, VERLENA FLAGG, JEWEL MORRIS, LEATHER WILLIAMS, EARNEST KING, LAQUITTA MEEKS, STANLEY FLAGG, CLAUDE LEE, PEGGY LATHAN, OLIVIA WESTMORELAND,**

15

             **CAREN WEBB, TERRY HAYWOOD, AUDREY FIELDS, all in their individual capacities**

          By: */s/ Cody C. Bailey*
              One of Defendants' Attorneys

OF COUNSEL:

LYNN FITCH
Attorney General of Mississippi

J. Chadwick Williams (MSB #102158)
chad.williams@ago.ms.gov
Special Assistant Attorney General
P.O. Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-3523

BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
William Trey Jones, III (MSB #99185)
tjones@brunini.com
Karen E. Howell (MSB #102243)
khowell@brunini.com
Cody C. Bailey (MSB #103718)
cbailey@brunini.com
L. Kyle Williams (MSB #105182)
kyle.williams@brunini.com
Jacob A. Bradley (MSB #105541)
jbradley@brunini.com
J. Breland Parker (MSB #106324)
bparker@brunini.com
The Pinnacle Building, Suite 100
190 East Capitol Street (39201)
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902

16

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 26, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                       */s/ Cody C. Bailey*
                                       Cody C. Bailey